ESTATE OF HARRY HOLMES, DECEASED, LUCY B. HOLMES, INDEPENDENT EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2943.   Promulgated April 5, 1944.

*J. E. Price, Esq.,* for the petitioner.
*Frank B. Schlosser, Esq.,* for the respondent.

#### OPINION.

BLACK, *Judge*: The Commissioner has determined a deficiency in estate tax against the estate of Harry Holmes, deceased, of $13,491.38. The deficiency is due to six adjustments made by the Commissioner to the estate tax return filed for the estate by the executrix. Only one of these adjustments is contested. It is the one by which the Commissioner added to the value of the property reported by the executrix in the estate tax return an item of $91,593.17 designated as "transfers." This item is explained in the deficiency notice as follows:

Pursuant to the provisions of Section 811 (d) of the Internal Revenue Code, it is held that the transfers made by the decedent to a trust executed under date of January 20, 1935, for the benefit of his three sons and certain other contingent beneficiaries, are properly includible in the gross estate of the decedent, that is to the extent of the decedent's community property interest therein. * * *

Petitioner by appropriate assignments of error contests the correctness of the foregoing adjustment made by the Commissioner.

The facts have been stipulated and they are adopted as our findings of fact. The following summary of these facts will suffice for the purposes of this opinion.

Petitioner is the duly qualified and acting independent executrix of the estate of Harry Holmes, her husband. A timely estate tax return

was filed with the collector of internal revenue for the first district of Texas at Austin, Texas.

Harry Holmes of Houston, Texas, on January 20, 1935, executed an instrument, signed "Harry Holmes, Grantor and Trustee," which was duly acknowledged by him and recorded in the deed records of Harris County, Texas. In this instrument he created a trust in favor of his three sons, respectively, Harry Holmes, Jr., John B. Holmes, and Thomas J. Holmes, and he conveyed to himself, Harry Holmes, trustee, and successor trustee provided for, for each of the sons, ten shares of stock in the Quintana Petroleum Co., a Texas corporation. This corporation was thereafter liquidated and the pro rata part of the corporation's assets was conveyed to Harry Holmes, trustee, under and by virtue of the above mentioned trust instrument. Harry Holmes died on October 5, 1940, five years and eight and one-half months after he had executed this instrument and without terminating the trust.

The trust indenture contained, among others, the following provisions:

### FIRST

That I, Harry Holmes, for and in consideration of One ($1.00) Dollar lawful money of the United States of America, and other good, valuable and sufficient consideration to me moving, receipt whereof is hereby acknowledged, do hereby irrevocably give, grant, convey, assign, transfer, set over and deliver said stock unto Harry Holmes, Trustee, during my lifetime,—unless sooner terminated, as hereinafter provided,—and upon my death, unto my sons, Harry Holmes, Jr., John B. Holmes and Thomas J. Holmes, as Joint-Trustees, or such of them as shall have reached the age of twenty-one (21) years, or shall have had their disabilities of minority removed, or the survivor or survivors of them, or to such other Trustee as may be appointed, as hereinafter provided; * * * for the use and benefit of my sons, Harry Holmes, Jr., John B. Holmes and Thomas J. Holmes, in equal shares, and such other beneficiaries and for such other purposes as hereinafter provided, * * *.

  *   *   *   *   *   *   *

The term "Trustee", as herein used, shall be construed as referring to myself while I act as Trustee hereunder, and thereafter to each and all of the Joint-Trustees named or provided for, as, if and when they act as such.

  *   *   *   *   *   *   *

### THIRD

The Trustee shall, upon the execution hereof, divide or allocate the Trust Estate into three equal shares or separate trusts, one share or trust for my son, Harry Holmes, Jr., his surviving issue, if any, and such other beneficiaries and for such other purposes, as hereinafter provided; one share or trust for my son, John B. Holmes, his surviving issue, if any, and such other beneficiaries and for such other purposes, as hereinafter provided; and one share or trust for my son, Thomas J. Holmes, his surviving issue, if any, and such other beneficiaries and for such other purposes as hereinafter provided.

In the fourth, fifth, and sixth paragraphs of the trust indenture, each paragraph relating to a separate son, it was provided that during

the lifetime of the named son and prior to the termination of the trust, the trustee should distribute the net income from the share so allocated to the respective son in convenient installments, preferably monthly. It was also provided that the trustee might withhold distribution of any portion of said net income should he determine it for the best interest of his son. Any portion of this net income so withheld was to be accumulated for the benefit of the named son and added to his part of the trust corpus and turned over to him at the termination of the trust.

It was also provided in the fourth, fifth, and sixth paragraphs of the trust instrument that should all of the settlor's sons die without leaving surviving issue prior to receipt and distribution of all of the residue of the trust estate, then such residue should be distributed to the settlor's wife, Lucy B. Holmes, if living, and if she be not living, said residue should be distributed to the persons who would be her legal heirs under the laws of descent and distribution of the State of Texas.

The trust instrument further provided:

### SEVENTH

The Trustee is hereby vested with full and complete legal and equitable title to all of the funds, property and estate embraced within the trusts hereof, both as to principal and income therefrom, subject only to the execution of the respective trusts herein created; and neither principal or the income of the Trust Estate or of any trust herein created shall be liable for the debts of any beneficiary hereof, nor shall the same be subjected to seizure by any creditor of any beneficiary under any writ or proceeding at law, or in equity, and no beneficiary hereunder shall have any power to sell, assign, transfer, encumber or in any other manner anticipate or dispose of his or her interest in the Trust Estate, or the income produced thereby, prior to its actual receipt by such beneficiary.

\* \* \* \* \* \* \*

### ELEVENTH

Grantor, during his lifetime, and my son or sons herein named, while acting as Trustee hereunder, may, if deemed advisable by them as Trustee, distribute to either of Grantor's children, the whole or any part of the principal of their respective trusts, and their interests hereunder. And Grantor may, during his lifetime, if deemed advisable by him, and my son or sons herein named, while acting as Trustee hereunder, may, if deemed advisable by them as Trustee, terminate either or all of said trusts herein created for the respective benefit of my said sons, and distribute the principal of the trust to the persons entitled to receive the same under the terms hereof on the date of such termination.

\* \* \* \* \* \* \*

### THIRTEENTH

The several trusts herein created shall continue and exist and be administered by the Trustee as herein provided (unless distributed by Grantor prior to his death, or distributed by Harry Holmes, Jr., John B. Holmes or Thomas J. Holmes, while they are acting as Trustee, as hereinbefore provided), for the period of fifteen (15) years from this date, provided that if, at the expiration of fifteen years, the trust shall be continued as to such beneficiaries' share or portion of

such Trust Estate until such beneficiaries shall reach the age of twenty-one (21) years, or shall die, in either of which events, the trust as to such portion shall terminate, and provided further, and it is hereby made an express condition of this trust, that the same shall terminate twenty-one (21) years after the death of the last survivor of my said sons.

Upon the termination of the trust herein created or of said respective trusts, as herein provided, the entire Trust Estate then remaining in the hands of the Trustee, whether principal or accumulated income, shall be immediately divided, distributed and paid over to the persons who are entitled to receive the same in the proportions and according to the provisions of this agreement.

The question which we have to determine in this proceeding is whether the value at date of death of decedent of certain property transferred by him under the terms of the trust indenture executed January 20, 1935, is includible in his gross estate under the provisions of section 811 (d) of the Internal Revenue Code, printed in the margin.[1]

The applicable regulation is section 81.20 of Treasury Regulations 105, printed in the margin.[2]

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death;

* * * * * * *

(d) REVOCABLE TRANSFERS—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph;

(3) DATE OF EXISTENCE OF POWER.—For the purposes of this subsection the power to alter, amend, or revoke shall be considered to exist on the date of the decedent's death * * *.

[2] SEC. 81.20. *Transfers with power to change the enjoyment.*—(a) *Transfers included.*— Subsection (d) of section 811 embraces a transfer by trust or otherwise (if not amounting to a bona fide sale for an adequate and full consideration in money or money's worth) when at the time of decedent's death the enjoyment of the transferred property, or some part thereof or interest therein, was subject to any change through a power exercisable either by the decedent alone, or by him in conjunction with some other person or persons, to alter, or amend, or revoke, or terminate. (See section 81.15.)

The addition to subdivision (d) (1) of the Revenue Act of 1926, by section 805 of the Revenue Act of 1936, of the phrase to the effect that it is not material in what capacity the power was subject to exercise by the decedent or by the other person or persons in conjunction with the decedent (which phrase is also embodied in subsection (d) (1) of section 811 of the Internal Revenue Code), is considered merely declaratory of the meaning of the subdivision prior to the addition of the phrase.

* * * * * * *

The third change made in the subdivision by the Revenue Act of 1936 (which is also

Paragraph (d) (1) of section 811, Internal Revenue Code, applies to "transfers after June 22, 1936." Paragraph (d) (2) of said section 811 applies to "transfers on or prior to June 22, 1936" and is the only part of section 811 (d) that applies to the instant case. If the value of the trust corpus here involved is not includible in decedent's estate under the last named provision, then it is not includible at all. We are cited to no other section of the statute under which it would be includible.

In support of his contention that the decedent, grantor of the trust, retained such powers as to bring them within the provisions of section 811 (d) (2), printed in the margin, the Commissioner relies strongly on *Mellon* v. *Driscoll*, 117 Fed. (2d) 477; certiorari denied, 313 U. S. 579. We do not think that this case supports the Commissioner's determination, but that, on the contrary, it is distinguishable on its facts. In that case in 1917 the settlor executed two deeds of trust for the benefit of his two minor children, a son Thomas and a daughter Lucille. Each of these instruments gave them the income from 150 $1,000 par value of bonds for life, with power of appointment by will. After the death of decedent the Commissioner included the value of the trust corpus as a part of decedent's taxable estate, and the taxpayer estate took the position that in the two trust indentures there involved the decedent had not reserved the power to alter, amend, or revoke the trust, but that, instead, although using the word "revoke," he had really merely reserved the right to "terminate" the trust and not to "revoke" it and that the word "terminate" was not added to section 302 (d) until the Revenue Act of 1936 and therefore was not applicable to the trust indentures which the decedent had executed in 1917 in behalf of his two children, Thomas and Lucille Mellon, the decedent having died in 1934. The pivotal language of the trust indenture involved in *Mellon* v. *Driscoll*, *supra*, was as follows:

The party of the first part hereby reserves the right after six months written notice of his intention so to do, served on the party of the second part, to revoke this trust, whereupon the principal of the trust fund shall be distributed to Thomas Mellon, S. Lucille Mellon Grange, and the trust shall end.

The court overruled the contention of the taxpayer and held that the word "revoke" as contained in the statute prior to the 1936 amendment was broad enough to include the right to terminate the trust and that the addition of the word "terminate" to section 302 (d) (1) by the

embodied in subsection (d) (1) of section 811 of the Internal Revenue Code) consists of the addition of the words "or terminate" following the words "to alter, amend, revoke." Such addition is considered but declaratory of the meaning of the subdivision prior to the amendment. A power to terminate capable of being so exercised as to revest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to inure to his benefit or the benefit of his estate, is, to that extent, the equivalent of a power to "revoke," when otherwise so exercisable as to effect a change in the enjoyment, is the equivalent of a power to "alter."

Revenue Act of 1936 did not change existing law, but was merely declaratory of what was already the law. If the word "terminate" is understood to have the meaning that the court gave it in *Mellon* v. *Driscoll*, then we agree that it is embraced by the word "revoke" as the statute existed prior to its amendment in the 1936 Act, passed June 22, 1936.

Webster's New International Dictionary, Second Edition, Unabridged, defines the word "revoke" as follows: "To recall, to annul by recalling or taking back; to repeal, to take back, to reassume, to recover, to draw back, to restore to use or operation." It was evidently in this sense that the court in *Mellon* v. *Driscoll* said that the word "terminate" was embraced within the meaning of the word "revoke." The Treasury in its own regulations recognizes that the word "terminate" in order to be embraced in the word "revoke" prior to the amendment of section 302 (d) by the Revenue Act of 1936 must be interpreted to mean what the court said it meant in *Mellon* v. *Driscoll*, for in section 81.20, Regulations 105, printed in the margin, *supra*, it is said:

* * * A power to terminate capable of being so exercised as to revest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to inure to his benefit or the benefit of his estate, is, to that extent, the equivalent of a power to "revoke", and when otherwise so exercisable as to effect a change in the enjoyment, is the equivalent of a power to "alter."

The word "terminate" ordinarily does not have as broad and comprehensive a meaning as the word "revoke." The word "terminate" is defined in Webster's New International Dictionary, Second Edition, Unabridged, to mean "To put an end to, to make to cease; to end, to come to a limit in time; to end; close; to have its end; final part, or outcome." Only by giving the word "terminate" the meaning which it is said to have in the Treasury regulations from which we have quoted above do we think the Treasury would be justified in saying, as it does, that the word "terminate" was included in the word "revoke" prior to the amendment of June 22, 1936, and that the addition of such word by the amendment was only declaratory of what was already existing law. Therefore, in the light of the above discussion, we think *Mellon* v. *Driscoll*, *supra*, is distinguishable from the instant case because when the settlor, Mellon, created his trust he gave his son and daughter a life estate in the *income* only from certain property conveyed to the trustee. The two beneficiaries of the trust had no interest whatever in the remainder of the trust except to exercise the power of appointment by will and they could never get any interest therein, unless the grantor exercised the power to revoke or terminate the trust and then conveyed to them the title of the corpus of the trust, which would revert to him by revocation or termination. Clearly it seems to us that under those circumstances that would have been making another gift of property to those two beneficiaries, the grantor's

children. It would have been "a change in the amounts they are to take," because if the settlor did not exercise the power to terminate the trusts his two children would receive only the income of the trust for life and would never receive any of the corpus of the trust, and they would have only the power to appoint the trust estate by will.

Paul, in his Federal Estate and Gift Taxation, vol. 1, sec. 7.09, dealing with "Trusts Subject to the Grantor's Power to Shift the Interests of the Beneficiaries," refers to the case of *Mellon* v. *Driscoll*, as follows: "And it has been held that a power to revoke which would change the beneficiaries' interests from life estates to absolute ownership make the grantor's estate taxable."

Thus in *Mellon* v. *Driscoll* the exercise of the power of revocation or termination meant a new conveyance of the corpus to the beneficiaries. In the instant case the remainder interests in the trust corpus, as well as the right to receive the income during the term of the trust, subject to the right of the trustee to either distribute or accumulate the income for the named beneficiaries, were irrevocably vested in the three beneficiaries by the trust indenture itself, and an exercise by the settlor of his power to terminate the trust meant only an acceleration of the time of enjoyment. The settlor reserved no power whatsoever to change the portions of the corpus which each beneficiary was to receive.

It is of course true, as respondent argues, that the mere fact that the settlor could not revest in himself or his estate any of the economic benefits of the property is of no importance. If under the power retained to terminate the trust he had also retained the power to alter or change the portions of the corpus which each beneficiary was to receive, then the value of the trust corpus over which he retained the power of change and alteration would have been includible as a part of his estate. *Porter* v. *Commissioner*, 288 U. S. 436, and many other cases which can be cited on that point. And it would have been unimportant whether this power had been retained by Holmes as settlor or only exercisable by him as trustee. *Welch* v. *Terhune*, 126 Fed. (2d) 695; certiorari denied, 317 U. S. 644.

But in transfers made on or prior to June 22, 1936, where the settlor has retained only a power to terminate the trust and has retained no power to revest in himself or in his estate any part of the trust corpus or to change or alter the disposition of the trust corpus already given to the beneficiaries under the terms of the trust indenture, but only to accelerate the time of its enjoyment, we do not think the value of the trust corpus is includible under section 811 (d) (2), Internal Revenue Code, or any other provision of the Internal Revenue Code. As to whether such transfers with such a power to "terminate" as we have here made after June 22, 1936, will be includible in a decedent's estate under section 811 (d) (1), Internal Revenue Code,

we express no opinion. We do not have that state of facts before us.

In consideration of the question we have here to decide it is appropriate that we consider that the gift tax and the estate tax are closely related. See *Sanford's Estate* v. *Commissioner*, 308 U. S. 39; *Higgins* v. *Commissioner*, 129 Fed. (2d) 237; certiorari denied, 317 U. S. 658.

It seems clear under Treasury Regulations 108, relating to the gift tax, that when decedent executed the trust indenture January 20, 1935, by which he conveyed the shares of stock in trust for the benefit of his three sons, he made a completed gift to each son and that such gifts were taxable in that year to the donor to the extent of their full value. It also seems clear that his reservation of the power to terminate the trust as to any son under paragraph eleventh thereof, but not to change the beneficiaries or to change the respective interests which they were to receive, did not render the gifts incomplete. The Treasury regulations so provided. A part of sec. 86.3, Regulations 108, relating to "Cessation of Donor's Dominion and Control," reads:

A gift shall not be considered incomplete, however, merely because the donor reserves the power to change the manner or time of enjoyment thereof. Thus, the creation of a trust the income of which is to be paid annually to the donee for a period of years, the corpus being distributable to him at the end of the period, and the power reserved by the donor being limited to a right to require that, instead of the income being so payable, it should be accumulated and distributed with the corpus to such donee at the termination of the period, constitutes a completed gift.

Suppose that decedent in the year of his death and prior thereto had by a formal instrument in writing relinquished his right to terminate the trust which was reserved in paragraph eleventh thereof, would such a relinquishment have been the occasion for the imposition of a gift tax? We think not. There would have been by such act no new gift or the completion of a tentative gift already made to justify the imposition of a gift tax on such a relinquishment. If there would have been no imposition of the gift tax on his voluntary surrender of the right to terminate because there would have been no sufficient transfer of property to justify the tax, it is difficult to see how an estate tax would have been imposed upon his involuntary cessation of such right by death, and, for the reasons we have already stated, we think an estate tax would not have been imposed.

Another case upon which the Commissioner relies is *Welch* v. *Terhune*, *supra*. We think that case is also distinguishable on its facts. The pivotal clause of the trust indenture involved in *Welch* v. *Terhune* was as follows:

This Trust may be terminated or amended at any time, but only with the written consent of the three Trustees herein named, and of any Trustee appointed by William L. Terhune under clause 14 hereof, or the survivors or survivor of them, and of the then surviving children of the said William L. Terhune.

The decision in the *Terhune* case turned on the fact that Terhune reserved the right to *amend* the trust in conjunction with the power to terminate it. This fact we think is shown from the following quotation from the court's opinion in the *Terhune* case:

> In the trust instrument there was also given the power to "amend." The plaintiffs contend that this power must be strictly construed so as to refer only to the minor changes in the mechanics of the operation or management of the trust and not to permit any amendment which would materially vary the respective property interests of the beneficiaries. * * *
>
> We are sure that these powers to terminate or amend, taken in conjunction, would authorize changes to be made in the enjoyment of the property interests at least as broad as those we held sufficient in *Chickering* v. *Commissioner*, 118 F. 2d 254, * * *. And see *Commissioner* v. *Chase National Bank*, 82 F. 2d 157 * * *. How much further these granted powers might extend we need not now inquire.

As we have already pointed out, the trust indenture here involved reserves the right to the grantor neither as an individual nor as a trustee to alter or amend the trust. He had only the right to terminate it and thereby accelerate the time that the beneficiaries might enjoy the corpus of the trust, which had already been irrevocably given to them in the trust indenture.

For reasons which we have stated above, we hold that the Commissioner erred in adding to the value of decedent's estate the item of $91,593.17 which he designated in his deficiency notice as "transfers."

Reviewed by the Court.

*Decision will be entered under Rule 50.*