Estate of Thomas Jefferson Newbold, Deceased, Katherine H. Newbold and Augustus P. Loring, Jr., Executors v. Commissioner.
Estate of Thomas Jefferson Newbold v. Commissioner
Docket No. 3423.
United States Tax Court
1945 Tax Ct. Memo LEXIS 175; 4 T.C.M. (CCH) 568; T.C.M. (RIA) 45191; June 4, 1945
*175 1. A good many years prior to his death decedent took out certain insurance policies in which his wife was irrevocably designated as the primary beneficiary. The decedent designated his children as contingent beneficiaries reserving power at any time to change such contingent beneficiaries and substitute others. Decedent died in 1939 and the proceeds of the policies, less certain loans against them, were paid to the primary beneficiary, she having survived him. Held, the proceeds of the policies less the statutory exemption of $40,000, are includible in decedent's gross estate under section 811(g) of the Internal Revenue Code. Broderick v. Keefe, 112 Fed. (2d) 293, followed. 2. In 1924 decedent created a trust for the equal benefit of his five children, naming himself and another as trustees. The trust indenture contained a provision that "The TRUSTEES may on their own motion and in the exercise of their discretion at any time terminate this Trust and divide the entire Trust Estate in the manner prescribed in paragraph VIII * * *." Held, that inasmuch as the beneficiaries were to share equally in the trust estate, the power of decedent as trustee to terminate the trust *176 and thus accelerate the time of enjoyment by the beneficiaries was not a power to alter, amend or revoke the trust and the trust corpus is not includible as a part of decedent's gross estate under section 811(d)(2) of the Internal Revenue Code. Estate of Harry Holmes, 3 T.C. 571, affirmed 148 Fed. (2d) 740 (C.C.A. 5th Circuit, April 14, 1945), followed. Earle W. Carr, Esq., 82 Devonshire *177 St., Boston 9, Mass., for the petitioners. J. T. Haslam, Esq., for the respondent. BLACK Memorandum Opinion BLACK, Judge: The Commissioner has determined a deficiency in estate tax against the Estate of Thomas Jefferson Newbold of $41,916.12. The deficiency is due to several adjustments made by the Commissioner in the estate tax return filed by the executors of decedent's estate. Some of these adjustments have been agreed to and not all of the deficiency is in controversy. The two adjustments which remain in issue are covered by the following assignments of error: (1) The respondent erred in including in the gross estate the sum of $121,873.99 representing net proceeds over the $40,000 exemption of eleven policies of insurance on the decedent's life. (2) The respondent erred in including in the gross estate the corpus of a trust created by the decedent on December 30, 1924, at a value of $62,342.80. The facts have been stipulated and they are adopted as our findings of fact. The following summary of these facts will suffice for a discussion of the issues which we have to decide. The petitioners are the duly appointed executors under the will of Thomas Jefferson *178 Newbold who died July 5, 1939, a resident of Santa Clara, Franklin County, New York. The petitioners filed their return as executors with the Collector of the Twenty-First District of New York. [The Facts] Issue 1 - Insurance Policies The statement attached to the notice of deficiency sets forth in detail eleven insurance policies with respect to which the Commissioner increased the reported value of the gross estate by the addition of $121,873.99. The petitioners concede that the proceeds of policy No. 2506823 amounting to $10,086 were correctly included in the gross estate. The balance of the proceeds of the policies amounting to $111,786.99 the petitioners contend should not be included in the gross estate. All of the policies in controversy were issued by The Northwestern Mutual Life Insurance Company on applications made by the decedent in Boston, Massachusetts, and the policies were delivered to him in Boston, Massachusetts, at times when he was a resident of Massachusetts. The decedent paid all of the premiums. In the first eight of the policies the death beneficiary originally named was: 'Katherine H. Newbold, Beneficiary, without reservation to the insured of the *179 right of revocation and change of beneficiary." At various times in 1929 and 1930, identical endorsements were added to the first eight of the policies listed above as follows: "By request of the insured, T. Jefferson, Jr., Thomas, Katherine, Sarah H. and Herman LeRoy Newbold, children, are hereby named contingent beneficiaries in this policy, share and share alike, the survivors or survivor, subject to the right of the insured to change such contingent beneficiaries." In the last two of the policies the death beneficiary originally named was: "Katherine H. Newbold, with reservation to the insured of the right of revocation and change of Beneficiary." At a later date the following endorsement was added to both of said policies: "By request of the insured, T. Jefferson, Jr., Thomas, Katherine, Sarah H. and Herman LeRoy Newbold, children, are designated as contingent beneficiaries, share and share alike, the survivors or survivor. The rights of the contingent beneficiaries shall be subject and subordinate to any outstanding indebtedness on account of this policy in favor of the Insurance Company." On July 30, 1932, the following endorsement was added to both of these policies: *180 "By request of the insured, the right to change or revoke the designation of Katherine H. Newbold, wife, as beneficiary, is waived, reserving to him, however, the right to change or revoke the designation of contingent beneficiaries." Katherine H. Newbold survived the decedent. Issue 2 - Trust Corpus On December 30, 1924, the decedent created a trust by transferring property to himself and Augustus P. Loring, as trustees, under a declaration of trust. The decedent and Augustus P. Loring were unrelated by blood or marriage. The trust indenture, among other things, provided: "II. The trustees shall * * * determine finally according to their own judgment * * * what shall be considered as the principal and what the income of the Trust Estate, * * *. "III. The Trustees shall receive all the income * * * and they shall pay all the charges and expenses of the management thereof, * * *. "IV. After deducting the expenses of administering the trust, * * * the TRUSTEES shall pay over the income, in equal shares, to the children of the said T. Jefferson Newbold, on the death of any such child, then to his or her issue per stirpes." Paragraph V of the indenture requires the trustees *181 to divide the trust income into equal parts; the parts to be assigned, provisionally, one part to each living child, one part to all issue of each deceased child, and one part to any living, unmarried spouse of any deceased child leaving no issue. The trustees were to apply those equal parts of income to the support, maintenance, education, or comfort of the respective participants; the trustees could make payments either to or for the benefit of any of the designated persons or classes out of his part as the trustees determined to be for the best interest and permanent benefit of the persons or classes: but, "* * * none of the aforesaid persons or classes, beneficiaries of the Trust Estate shall have any just claim or rights, either at Law or in Equity to force or compel the said TRUSTEES to pay any sum or sums of money in any manner or to any person or persons or to do any other thing, if the said TRUSTEES in the exercise of their judgment and discretion as aforesaid decide against the payment of such money or the doing of such thing." Paragraph VI reads: "No person or class enumerated in this instrument as a beneficiary shall have any absolute or vested right to receive from *182 income any payments either directly or for his benefit and no beneficiary shall assign any interest * * *. If any beneficiary attempts to assign, or if any creditor of any beneficiary attempts to reach by legal process any such interest of such beneficiary * * *, I order and direct that the TRUSTEES apply such interest directly to the support of the said beneficiary or his family, or in their absolute, uncontrolled and untrammeled discretion, the TRUSTEES may add such interest to the principal of the Trust Estate." Paragraph X reads: "The TRUSTEES may on their own motion and in the exercise of their discretion at any time terminate this Trust and divide the entire Trust Estate in the manner prescribed in paragraph VIII * * *." Paragraph IX reads: "There shall be no division of the capital or principal of the Trust Estate, except as the same may take place under paragraph X * * *, until the oldest living child of the SETTLOR shall have attained the age of twenty-one years. Upon attaining the age of twenty-one years, or at any time thereafter, any child of the said SETTLOR may in writing request the TRUSTEES to give to him or her absolutely and in fee simple any part, up to but *183 not beyond fifty per cent of its total value, of the interest in the capital of the Trust Estate which such child would have if the said Trust Estate were terminated in the manner prescribed in paragraph VIII * * *. If, in the uncontrolled and untrammeled discretion of the TRUSTEES, such distribution would be for the best interests and welfare of the said child, the TRUSTEES may accede to such request and give to such child such sum, the amount of said share to be determined as set forth in paragraph VIII, but in any event the decision of the TRUSTEES upon such request shall be final and not subject to review." Paragraph VII reads: "The said Trust shall, subject to the provisions in paragraphs IX and X * * *, be of full force and effect and shall continue until the youngest living child of the SETTLOR shall have attained the age of thirty years and then the Trust shall terminate and the principal of the Trust Estate shall be distributed in the following manner: * * *." The provisions for distribution of the trust principal were: (1) a part for each living child of the settlor; (2) a part for each deceased child leaving issue; and (3) a part for each deceased child leaving no *184 issue but leaving a spouse who has not then remarried. Those in the first classification would receive their portion; those in the second classification would receive a distribution in equal parts by representation; and the portions assigned to those beneficiaries in the third class would be retained in a separate trust over which the trustees would have the same powers as those given to them in this trust, and, so long as the surviving spouse remained unmarried, he or she would receive the income of that part of the trust allocated to him or her - all rights to income or principal would cease upon death or remarriage of the spouse and the principal would be distributed to the heirs of the deceased child. At the date of decedent's death all of his children were living. They were born on the following dates: Name
Date of Birth
Thomas Newbold
Jan. 4, 1916
T. Jefferson Newbold, Jr.
Nov. 2, 1914
Katherine Newbold
Mar. 2, 1918
Sarah H. Newbold
Mar. 23, 1922
Herman LeRoy Newbold
July 8, 1924
The trustees' powers of termination and distribution of principal were not exercised prior to the decedent's death. The net income of the trust has always been divided *185 equally among, or applied for the benefit of, the decedent's five children. [Opinion] Issue 1 We think issue 1 must be decided for the respondent. The cases which petitioners cite in support of their contention that the proceeds of the insurance policies should not be included in decedent's gross estate were decided prior to the Supreme Court's decision in Helvering v. Hallock, 309 U.S. 106. Petitioners concede this fact and that since the Hallock case, the decisions have been against them referring to Estate of John E. Cain, Sr., 43 B.T.A. 1133; Estate of Frederick Bodell, 47 B.T.A. 62; and Commissioner v. Washer, 127 Fed. (2d) 446. Respondent principally relies upon Keefe v. Broderick, 112 Fed. (2d) 293, First Circuit. The Keefe case is very similar in its facts to the instant case and supports the determination which the Commissioner has made. It would not be possible to distinguish that case from this one on any substantial principle involved. Petitioners, while fully recognizing that the cases are against them since the decision of the Supreme Court in Helvering v. Hallock, supra, urge *186 that there should be included in any event, not the full proceeds of the policies but only the remainder after excluding the value of the interest of Katherine H. Newbold, who was the designated primary beneficiary and whose designation as such was irrevocable. On this point, petitioners in their brief, submit as follows: Here, again, the petitioners must concede at the outset that such decisions as there are on this point are against them. Estate of Frederick Bodell, 47 BTA 62, Commissioner v. Washer, 127 Fed. (2d) 446. However, in these cases, the taxpayer's contention was that the amount to be included in the gross estate was only the value of the decedent's possibility of reverter. The petitioners' contention here is that there should be excluded only the value of the outstanding life estate in the irrevocably designated beneficiary. Katherine Newbold's interest in the policies was to collect them upon the date of the death of decedent, if she survived him, less any indebtedness which might exist against the policies at decedent's death. If she had predeceased decedent, her estate would have had no interest in the policies to be included in her gross *187 estate. The contingent beneficiaries named in the policies would have acquired their rights, not as heirs of Katherine Newbold but by reason of having been designated as continent beneficiaries by decedent. Their rights were subject to change by decedent at any time prior to his death. We fail to see where anything is to be deducted from the proceeds of the policies by reason of the fact that Katherine Newbold had been irrevocably designated as the primary beneficiary of the policies. We think the authorities are against petitioners on their alternative contention. Issue 1 is decided for the Commissioner. Issue 2 The Commissioner has included in decedent's gross estate the corpus of a trust which he created on December 30, 1924, for the equal benefit of his five children, all of whom were living at the time of his death in 1939. In including the value of this trust corpus in decedent's gross estate, the Commissioner stated in his deficiency notice as follows: The value as at the date of death of the corpus of the inter vivos trust created by the decedent December 13, 1924 is includible in the value of the gross estate under Sections 811 (c) and (d) of the Internal Revenue Code. *188 Respondent no longer relies on section 811(c), I.R.C., but relies only on section 811(d), I.R.C. That provision is printed in the margin. [1]
*189 At the hearing of this proceeding it was agreed by the parties that the issue involved in the instant case was similar to that which we decided in favor of the taxpayer in Estate of Harry Holmes, 3 T.C. 571. At the time of the hearing our decision in the Holmes case was on review by the Fifth Circuit. Since then our decision has been affirmed. See Commissioner v. Estate of Harry Holmes, 148 Fed. (2d) 740, decided April 14, 1945. In that case, as here, the transfers in trust had taken place prior to June 22, 1936. Therefore section 811(d)(2) was the applicable statute. It is the applicable statute here. In the instant case the provision in the trust indenture which gave the trustees authority to terminate the trusts, reads as follows: The TRUSTEES may on their own motion and in the exercise of their discretion at any time terminate this Trust and divide the entire Trust Estate in the manner prescribed in paragraph VIII of this instrument, but before such termination shall be valid, the TRUSTEES shall give six months written notice in advance thereof to each beneficiary then alive, but they shall not be required to give any notice whatsoever to any guardian *190 ad litem or other representative of any beneficiary or beneficiaries at such time yet unborn. Respondent argues that the foregoing power to terminate the trust and thus accelerate the time of enjoyment by the beneficiaries amounts to a power to alter, amend, or revoke the trust as those terms are used in section 811(d)(2), I.R.C. This is the same argument which respondent made in Estate of Harry Holmes, supra, and which we rejected. On authority of the Holmes case, we sustain petitioners on this issue. Respondent in his brief argues, as we construe his argument, that the trustees had power to shift the portions of the trust corpus which the respective beneficiaries were to receive from one to the other, thus making applicable such cases as Porter v. Commissioner, 288 U.S. 436. We have carefully read and considered the trust indenture and we find no such provisions in it. It seems clear that in setting up the trust the decedent intended to and did make equal provision for his five children. It is stipulated that "The net income of the trust has always been divided equally among, or applied for the benefit of, the decedent's five children." The *191 trust was irrevocable. It reserved to decedent no power to alter, amend or revoke. The power which he and his contrustee did have to terminate the trust and accelerate the time of enjoyment of the beneficiaries was not sufficient to cause the inclusion of the trust corpus in decedent's gross estate under section 811(d)(2), I.R.C., which is applicable to the facts in the instant case. Estate of Harry Holmes, supra. We decide Issue 2 in favor of petitioners. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, * * * - * * * * *
(d) Revocable Transfers - (1) Transfers after June 22, 1936. - To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death; (2) Transfers on or prior to June 22, 1936. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph;↩