## CITY OF STAMFORD v. KING et al.

### No. 2052.

Court of Civil Appeals of Texas. Eastland.

Oct. 25, 1940.

Rehearing Denied Nov. 15, 1940.

924

Coombes & Andrews, of Stamford, for appellant.

D. M. Oldham and Hudson Smart, both of Abilene, for appellee.

LESLIE, Chief Justice.

Minnie L. King, individually and as executrix of the estate of C. H. King, deceased, instituted this suit against the City of Stamford and J. J. Kell, to recover title and possession of 276 acres of land, except as to the surface rights, and alleged easement therein, in favor of the city, for the purpose of maintaining a water reservoir, etc. The defendants answered by general denial and plea of not guilty. A trial was had before the court and jury, and on the verdict returned judgment was entered in favor of the plaintiff limiting the rights of the city to the surface of the lands for reservoir purposes only.

The city appeals and the parties will be referred to as in the trial court.

October 2, 1918, C. H. King, husband of the plaintiff, contracted to sell the city of Stamford the 276 acres of land in controversy, definite field notes to be furnished later. April 8, 1919, he executed to the city of Stamford, a municipal corporation, a warranty deed, embracing the land. The contract of October 2, was referred to and made a part of the deed. The two instruments must, therefore, be considered together, and wherever the term "deed" is used, it will be in the sense that it is composed of both instruments.

In the first count of the petition the plaintiff asserts that the deed conveyed the city nothing but surface rights for the purpose of a reservoir, leaving her in sole ownership of all minerals and other sub-surface rights. In the second count, she alleges that the deed is ambiguous in different respects and by pleadings and proof endeavors to show the intention of the parties was to convey the city nothing but surface rights for a reservoir, etc. The third count is one in trespass to try title.

The defendants urged a general demurrer which was overruled, and at the conclusion of plaintiff's testimony, and at the conclusion of all the testimony asked for an instructed verdict, which the court refused. Error is predicated upon these rulings and the points raised will be considered together.

The portions of the contract material to the questions raised are as follows:

"1st. It is the intention and desire of the City of Stamford to purchase, acquire and

hold a certain part of the Clear Fork River, now owned by C. H. King and others, for the sole purpose of building and maintaining a city reservoir or lake to be used in furnishing the city of Stamford with an adequate supply of water and to acquire the fee-simple title to the land covered by a part of said lake and the surrounding bank of the same, as hereinafter designated more in detail, for the purpose of maintaining and preserving the purity of said lake, and to prevent the pollution and misuse of the waters therein. The lake to be known as 'Clear Fork Lake', as more fully shown by blue print No. 44, made by Ed Burrow, surveyor, on September 17, 1918, which is here now adopted and made a part of this agreement:

"2. The Clear Fork Lake shall embrace, among other lands, commencing at the Lueders Survey and extending up the Clear Fork to a point known as the Red Bluff, which comprises the entire lake proper, except that part of the same on land owned by J. M. Roberts, M. J. Berryhill and W. H. Myatt, which part will be on land now owned by C. H. King, and is marked X on the blue print; more fully described as follows: * * *

"Then beginning on the north line, 100 feet from the water's edge on the Myatt land, to a slough about the lower end of the Johnson Hole; * * * and thence back to the water's edge, *(it being the intention of King to have reserved to his own use about 15 acres fronting on the water's edge at this point, and the same is not to be included in the part sold to the City of Stamford)*;

"Thence back to the bank to within 100 feet of the water's edge, about 300 to 500 yards from said slough, thence following 100 feet from the water's edge to the above Berryhill and Roberts lands. Then beginning on the north side of the Roberts Survey, 100 feet from the water's edge on west side, following the water's edge to the original corner of H. Lueders Survey, near the mouth of Cottonwood Creek; *the above embraces all the land of C. H. King below the Red Bluff Hole of the Clear Fork, running north and west, 100 feet from the water's edge of the lake, lying along the meanderings of the Clear Fork River.* * * *

"The above description is intended to cover all that part of the land that will be used or covered by Clear Fork Lake belonging to C. H. King, and which the City here now agrees to buy from him, but a more corrected and better description of the field notes will be made, at the time a transfer of the land is made by him to the city; *that part of the water on his land above what is known as the Red Bluff Hole of the Clear Fork will not be considered a part of the Clear Fork Lake.*
* * *

"4. Said King agrees to furnish to the city for their examination a complete abstract of title down to date, showing a *good and marketable title in him to the lands above mentioned,* and if for any reason he cannot convey a good and marketable title to said lands to the city, or any part thereof, the city agrees to reject the title to that part only which does not show a marketable title, and to accept the balance of said lands, and give the said C. H. King necessary or proper time in which to perfect his title to the part that is rejected. The city agrees to examine said abstract of titles and report to him any and all objections made to the same within a reasonable time after being furnished an abstract of title.
* * *

"5. *Said C. H. King is to have full right to all water that may be necessary or proper or reasonable for either domestic or livestock or household purposes, either for himself, his tenants, sub-lessees, assignees, vendees, legal or personal representatives, with the right to use and forever maintain any pump lines* or pumping stations that may be necessary to appropriate said water out of said Clear Fork Lake; and the city agrees to build, erect and maintain at its own expense lanes or pass-ways into said lake and under any bridges of sufficient width and frontage on the water front to permit the passage of livestock and tenants or his assignees, with wagons and teams, to haul away or use said water, with free access: All without expense or cost to him, and free of any charges, and he agrees to protect the game on the lake proper. Said pipelines and pass-ways not to exceed ten in number.
* * *

"6. *Said C. H. King is to have full and free access and privileges and rights to hunt, fish, boating or camping in or upon or around said lake, and this right shall extend to his family, and other persons who he may see fit to grant the right to in writing duly signed by himself;* without any expense to himself. And he, the said C. H. King, further agrees not to do or permit to be done by any person under his control and

authority, any act that would materially *damage or injure said lake or. its fences or belonging,* or' would cause a pollution or contamination of its waters or banks, *and to use his efforts to prevent any of said persons from willfully trespassing upon said lake property, or the waters above said Clear Fork Lake proper, that is above the Red Bluff above mentioned, but he will use his best efforts to prevent any pollution or contamination of this part of the water or the banks, of said Clear Fork River: and not use or permit said water to be used for irrigation purposes, except gardens and domestic use.*" (Italics ours.)

The deed of April 8, 1919, is the usual warranty deed and grants, bargains, sells and conveys in unrestricted scope eight separate tracts of land to the "city of Stamford, a municipal corporation." They aggregate 276.30 acres, constitute a tract of land about 3½ miles long, extending back about 100 feet from the water's edge on each side of Clear Fork. Following an accurate description of these tracts of land, the deed contains the following:

"This conveyance to the properties herein described is made subject to and encumbered with the rights, liabilities, claims, terms and effect of a certain contract made upon the second day of October, 1918, by and between the said City of Stamford and C. H. King, grantor, and now filed on record in the county clerk's office of Jones County, Texas, to which reference is here now made for the full force, effect and reading of the same, which instrument is here now made a part and parcel of this deed of conveyance.

"To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto the city of Stamford, Texas, its assigns and successors forever, and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said city of Stamford, Texas, its assigns and successors against every person whomsoever lawfully claiming, or to claim, the same, or any part thereof, provided this deed of conveyance, as stated above, is expressly made subject to the terms, reading and effect of a written contract by and between the city of Stamford, Texas, and C. H. King, executed on the second day of October, 1918, and now of record in the deed records of Jones County, Texas, to which reference is made."

While the plaintiff asserts that the terms of the deed· are clear and unambiguous in conveying the "river bed" and its banks to the city for the sole purpose of constructing a city reservoir and keeping the water thereof free from pollution (first count), nevertheless the plaintiff goes further and alleges in the alternative that if she be mistaken in this, that the words, phrases and paragraphs in the contract, and especially paragraph 1 thereof, may be looked at in different ways and different conclusions derived therefrom as to the legal effect of the same, thereby presenting elements or issues of ambiguity calling for the ascertainment of the true intention of the parties by proper pleading and testimony and reformation of the deed in accordance with the intention thus established.

In her brief the plaintiff also states: "On the other hand, if we take that part of the paragraph reading 'to acquire the fee-simple title to the land' and disregard the other parts of the paragraph, then we have the one single idea expressed and one single purpose, that is to convey the whole fee simple title, such as would be used and conveyed under the words 'grant, sell and convey to the city of Stamford, Texas, its successors and assigns forever.' This would give the city complete ownership, right of dominion, title and possession in, upon or under the earth and no room for construction could arise." (Sub-quotes from the deed).

In other words, by accepting a part of the deed a full fee-simple title to the lands is conveyed and by rejecting that part and adopting other portions of it the conveyance becomes limited to the surface only, and that for the sole purpose stated in the deed. In this and other respects, it is urged that ambiguity arises under such authorities as San Antonio Life Ins. Co. v. Griffith, Tex.Civ.App., 185 S.W. 335.

The trial court evidently concluded that the deed presented ambiguity and proceeded to permit the introduction of testimony, by virtue of which the sole issue was submitted to the jury. We are, therefore, called upon to determine whether the instrument conveyed to the city the full fee-simple title to the 276 acres of land, or a mere easement in the surface

thereof, for the purpose of maintaining a city reservoir and protecting its water from pollution.

The appellee dissects the deed, alleging in seven different respects that it presented ambiguities. In substance, these ambiguities are:

(a) That paragraph (1) of the contract "means and was intended to read 'to acquire the fee-simple title to the surface of said land or an easement therein for the purposes mentioned.'"

(b) That although "to acquire the fee-simple title to the land covered by a part of said lake is a technical and legal term which would ordinarily mean to acquire the absolute title to the soil, surface, subsurface and all minerals therein", nevertheless when it was provided in that same connection that the property was acquired for the sole purpose of maintaining and preserving the purity of said water and to prevent the pollution and misuse of the same, coupled with the express intention to acquire and hold the land for the sole purpose of building a city reservoir, the full fee-simple title was thus qualified and limited to that purpose alone. And it was not the intention of the parties that the instrument should be given its technical and legal meaning.

(c) That ambiguity arises by reason of the terms of the contract wherein King agrees to furnish the city for examination an abstract of title down to date showing marketable title in him to the lands without stating whether he will convey an absolute fee-simple title or "conditional or base" title for the purpose mentioned in said paragraph (1).

(d) That the contract discloses ambiguity in that "under the intention of the contract" the city of Stamford was to fence the lands conveyed but at the same time stipulates that the city was to build, erect and maintain at its own expense lanes or passways into said lake, etc., to permit the passage of livestock, wagons and tenants, etc.

(e) That ambiguity inheres in the deed by reason of paragraph (6) in that it provides that King was to retain the water above Red Bluff and that parol testimony was necessary to show what portion of the lake was above Red Bluff.

(f) That paragraph (1) of the contract evidences conflict and ambiguity in that it states the land was acquired for the sole purpose of a reservoir and also states it was acquired in fee-simple.

(g) Ambiguity arises wherein the contract (paragraph 6) provides that King retain complete control of the water "backed upon his land above Clear Fork Lake proper", since the implication or inference therefrom would arise "that he did own some right, title or interest in some part of the land which would be covered by water" and the city did not own the absolute fee-simple title to the land.

In substance, the plaintiff seems to contend that paragraph 1 is in conflict with various paragraphs of the contract and deed, as well as containing conflicts within itself.

The first question to be determined, and, in our view, the one that is decisive of this lawsuit, is whether or not the deed is an ambiguous instrument in the specification of the right or estate conveyed. There are some fundamental principles of law that may be helpful in answering this question.

■ (1) The intention of the parties to a deed, or contract, is the paramount consideration, and such intention is to be gathered from a consideration of the entire instrument taken by its four corners. 10 Tex.Jur. p. 282, sec. 164; 10 Tex.Jur. p. 272, sec. 159.

■ (2) If there are no ambiguities in the contract or deed, its construction is a question of law for the court. San Antonio Machine & Supply Co. v. Allen, Tex.Civ.App., 268 S.W. 532.

■ (3) If there be no ambiguity in the contract the same will be enforced as written, even though it does not express the original intention of the parties. 10 Tex.Jur. p. 274, sec. 160; San Antonio Machine Co. v. Allen, supra.

■ (4) A deed will be construed most strongly against the grantor. Lott v. Kaiser, 61 Tex. 665; Demilly v. Texas & N. O. Ry. Co., 91 Tex. 215, 42 S.W. 540; 14 Tex.Jur. p. 926, sec. 148.

■ (5) Each paragraph and clause of the contract must be construed with every other clause and paragraph therein.

■ (6) If possible, that construction will be adopted which gives effect to each and every part of the instrument. Hearne v. Gillett, 62 Tex. 23; Giles v. Corbett, Tex.Civ.App., 293 S.W. 180.

If, when considered as a whole, a deed or contract is susceptible of a reasonable construction whereby all of its provisions can be given effect, that is the construction to be placed thereon by the court.

(8) It is the general rule in this State, both of statute and decision, that where an estate in land is granted or devised, unless limited by express words or by a fair construction, the fee-simple estate is always favored. Art. 1291, Vernon's Ann.Civ.Statutes, and authorities thereunder. This article of the statute reads: "Every estate in lands which shall hereafter be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

In Gulf Prod. Co. v. Continental Oil Co., Tex.Sup., 132 S.W.2d 553, 563, it is said: "By reason of this statute, the intent to convey an estate in fee simple will be presumed where a less estate is not expressly and unequivocally declared." Citing many authorities.

This record has been carefully considered in the light of pertinent rules of law, and we are of the opinion that any fair analysis of the deed in the instant case leads to but one conclusion, namely, that it is plain and unambiguous in its terms and that such deed alone must be held to be the sole evidence of the intention of the parties. So viewing it, what was that intention? Reading it from its four corners it clearly shows that the city of Stamford desired to acquire the full fee-simple title to the land, the bed, and banks of the Clear Fork of the Brazos River for the purpose of building a city reservoir and maintaining the purity of the water therein. In the instrument the reservoir itself was designated "Clear Fork Lake" and commonly spoken of as "the lake proper." The metes and bounds of the lands to be acquired were set out in the deed as definitely as engineering skill could well make them. As to the lake proper, anything less than a full fee-simple title was not deemed sufficient to enable the municipality to impound the water and protect the same from contamination of mining and other like operations.

The strip of land is about 3½ miles in length, in the main narrow, and extending from the stream about 100 feet on each side. From the field notes it obviously extended up the river to a point known as Red Bluff. The land above Red Bluff was not purchased by the city but remained the property of the grantor. King and the officials representing the city recognized that the dam would not only impound water in the limits of Clear Fork Lake, but that the dam would necessarily throw water back on to the lands of King above the Bluff. As to such waters, awaiting consumption by the city but backed over and standing upon the unconveyed lands of King, the contract provided that in exercising the rights and privileges retained by him in the lake proper that he also "use his efforts to prevent any of such persons from willfully trespassing on said lake proper or the waters above said Clear Fork Lake proper that is above the Red Bluff above mentioned, but he will use his best efforts to prevent any pollution or contamination of this part of the water or the banks, of said Clear Fork River and not use or permit said water to be used for irrigation purposes, except gardens and domestic use."

In these stipulations a mere easement or servitude is plainly created in behalf of the city, granting it the right to back waters over the unpurchased land of King along the Clear Fork and above Red Bluff. This feature of the deed would seem to put beyond doubt the intention of the parties to the deed; that is, it clearly appears that the city merely acquired an easement for storage purposes in the unpurchased lands of King above Red Bluff, whereas it acquired a full fee simple title to the 276.30 acres of land constituting Clear Fork Lake or the lake proper.

As to the unpurchased lands above Red Bluff, they were evidently sufficiently far away from the intakes to render the possibility of pollution negligible or quite improbable. As to the lake proper, the full fee-simple title was necessary to achieve the purposes of a reservoir and the protection of the waters therein.

Further, the granting clause to the deed under consideration is as broad as the "grant, bargain, sell and convey" provision can well be made. The same breadth of

expression is retained in the habendum and the warranty provisions of the deed. True, there is a stipulation in the deed referring to the original contract and making it a part of the same, but, as pointed out, that is in any event a part of the deed and when its contents are considered we find that in paragraph (1) it is specifically provided that the city not only desires to acquire the King and other lands for the purpose of building a water reservoir but "to acquire the fee-simple title to the land covered by a part of said lake and the surrounding banks of the same." As to the lake proper the deed carries an emphasis on full fee-simple title.

It would seem to be entirely unnecessary to appeal to the provisions of R.S. Art. 1291 to support our conclusion. Evidently there are no express words in the deed limiting the full fee-simple title, and there is no rule based upon construction or operation of law that restricts the conveyance of such title.

The deed contains other evidence making certain the intentions of the parties, as we find it. The grantor, against whom the instrument must be construed most strongly, specifically enumerated a number of rights and privileges reserved to him in this conveyance of his lands. Among them (1) "full right to take all water, necessary or proper * * * for domestic, livestock or household purposes either for himself, his tenants * * * vendeès, legal * * * representatives with the right to use and *forever maintain* any pump lines or pumping stations that may be necessary to appropriate said waters out of said Clear Fork Lake * .* *." See paragraph 5 of contract for these and other rights, etc. (2) "Full and free access * * * and rights to hunt, fish * * * upon or around said lake" and rights "extend to * * * family and other persons whom he may see fit to grant the right to in writing." Paragraph 6 contains these and other rights and the stipulation hereinbefore considered, namely, "to use his (King's) efforts to prevent any of said persons from willfully trespassing upon said lake proper or the waters above said Clear Fork Lake proper, that is above the Red Bluff above mentioned, * * * and not use or permit said water to be used for irrigation purposes except gardens and domestic use."

Since the grantor by his deed (including contract) specified with such particularity the interests, rights and privileges reserved or retained by him in this transaction with the city, we must necessarily conclude that rights, privileges and interests not specifically mentioned and reserved were conveyed to the municipality. It would have been as easy to stipulate for the reservation of minerals as to stipulate for the use of the waters, etc., "forever."

■■ The plaintiff's contention that the deed granted only a limited fee or surface right only must be overruled for another reason. As said by our Supreme Court in Hughes v. Gladewater County Line Ind. School District, 124 Tex. 190, 76 S.W.2d 471, 473: "It is definitely settled in this state that where a deed contains apt language denoting the grant of an unconditional fee estate in land, *other language contained in the instrument, which merely denotes that the grant was made for a particular purpose is not regarded as implying that the grant is conditional.* Texas & P. Ry. Co. v. Martin [123 Tex. 383], 71 S.W.2d 867, and authorities there cited. The same rule applies in construing a given provision for the purpose of ascertaining if it limits the duration of the grant. It is quite . clear, therefore, that neither of the following clauses of the deed here under consideration imports either a condition subsequent or a limitation respecting the duration of the grant, namely, the granting clause which in terms denotes a grant 'for school purposes only for the colored children of the County of Gregg,' etc.; and the clause reading, 'It is understood that the land is deeded to the trustees for school purposes only for the colored children of District No. 3 of Gregg County, Texas.' " (Italics ours)

On this proposition we also cite the following authorities which we believe are conclusive of the correctness of our construction of the deed: Taylor v. County School Trustees of Eastland County, Tex. Civ.App., 229 S.W. 670, writ refused; Wilson v. County School Trustees of Eastland County, Tex.Civ.App., 229 S.W. 669; Texas & P. Ry. Co. v. Martin, 123 Tex. 383, 71 S.W.2d 867.

In each of the cases in 229 S.W. land was conveyed "for school purposes", etc., the granting and habendum clause in each were, in substance, as those involved in the instant case. In each case it was held that a full fee-simple title passed and that it included oil, gas and minerals.

In the opinion in Texas & P. Ry. Co. v. Martin, supra [123 Tex. 383, 71 S.W.2d 870], Judge Critz, in discussing a contention similar to that here under consideration, referred to the following rule laid down in 18 C.J. p. 336, sec. 335: "But a fee will pass by a deed containing a clause or recital which is merely declaratory of the use contemplated of the land where the other parts of the deed operate as a conveyance of the fee. * * *" That, in our opinion, fits the case before us.

Other contentions of the plaintiff suggesting ambiguities in the deed have been duly considered and are believed to be without merit. They do not bear upon the proposition of limitation of estate granted. Hence, we have addressed our attention to the controlling point.

 Plaintiff further contends that the city of Stamford had no right to acquire the full fee-simple title to the land in any event. That prior to 1923, during which time the city of Stamford acquired these lands for the purposes stated, a municipality could not acquire the full and complete fee-simple title to lands, including the minerals, etc. In support of such contention we are cited to the opinion in Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268. It was there held that a railroad in acquiring lands for right of way purposes did not acquire sub-surface minerals, etc. As applied to the facts in the instant case, we do not believe there is any merit in this contention and rest the conclusion upon Art. 1175, R.S.1925, subds. 3, 11, 13, 15; Isaac v. City of Houston, Tex.Civ.App., 60 S.W.2d 543. We do not believe the character of interest which the municipality could then acquire for a proper purpose was so restricted or cut down by the statute. The facts of the instant case are so different from those involved in Right of Way Oil Co. v. Gladys City Co., supra, that it is deemed unnecessary to point out the distinguishing features, rendering that opinion inapplicable here. The facts of other authorities relied upon by plaintiff likewise differ from those of the instant case and will not be discussed.

If we are correct in the views above expressed they put an end to this lawsuit and it becomes our duty to reverse and render the same in favor of the city of Stamford. It is so ordered.