ESTATE OF I. H. BURNEY, DECEASED, HENRY P. BURNEY, BELLE L. S. BURNEY AND ELMER RENFRO, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3058. Promulgated December 11, 1944.

*R. B. Cannon, esq., Harry C. Weeeks, Esq.*, and *Henry P. Burney, Esq.*, for the petitioners.

*J. Marvin Kelley, Esq.*, for the respondent.

454

OPINION.

ARUNDELL, *Judge*: The first question we must determine is whether the community one-half of the corpus of the trust created by the decedent on February 3, 1927, is includible in his estate under section 811 (d) (2) of the Internal Revenue Code.[2] Expressed in terms of the statute quoted in the margin, the question is whether and to what extent the decedent had the power to alter, amend, or revoke the trust which he created on February 3, 1927, so that the enjoyment of the interests created by the trust was subject *at the date of the decedent's death* to any change through the exercise of that power. It is conceded by the petitioner that the decedent had such a power at the time of the creation of the trust. That power is to be found in that sentence of the trust instrument which reads as follows: "I reserve the privilege of changing the relative interests of the different beneficiaries at any time by reducing the interest of some and adding to the interests of others." However, the petitioner contends that the meaning of that provision in the trust instrument is such that, once having been exercised by the decedent, who directed the trustee to distribute to decedent's five brothers a pro rata share of the trust property as "the first and last distribution to them, liquidating their entire interest in the trust," the decedent at the time of his death had no power to alter, amend, or revoke the trust. In other words, petitioner contends that the power reserved by the settlor in the trust instrument to change the proportional shares of the beneficiaries was exhausted by the single exercise thereof. Respondent, on the other hand, contends to the contrary, emphasizing that the language used in the trust instrument, particularly the words "at any time," did not restrict the decedent in exercising the powers granted to one time only or any particular number of times and that the decedent retained this privilege until the day of his death.

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal. tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(d) REVOCABLE TRANSFERS.—

\* \* \* \* \* \*

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

The facts in the instant case establish that the decedent exercised the power which he reserved to himself "of changing the relative interests of the different beneficiaries at any time by reducing the interest of some and adding to the interests of others" by directing the trustee to distribute the sum of $30,321.84 to his five brothers, who, together with decedent's wife, comprised all of the beneficiaries of the trust. As part of that direction, the decedent stated to the trustee that such distribution to the five brothers was to be "the first and last distribution to them, liquidating their entire interest in the trust." In compliance with the decedent's instructions, the trustee delivered to each of the five brothers a check in the amount of $6,064.37, simultaneously therewith advising each of them that that payment was "in complete settlement of your interest in the trust," and the brothers accepted these checks on that condition. The expressions of the decedent contained in his last will and testament make clear that he believed that his action had liquidated his brothers' interests in the trust.

We are of the opinion that the manner in which the decedent exercised the power was consistent with the terms of that power and that, as a result of the action taken by the decedent, all beneficial interest of the brothers in the trust was effectively and finally eliminated. *Faulkner* v. *Irving Trust Co.*, 246 N. Y. S. 313; *Meyer* v. *Bank of Manhattan Trust Co.*, 249 N. Y. S. 640; 65 Corpus Juris 344. With the elimination of all five of the brothers as beneficiaries, the decedent's wife remained the sole beneficiary, and the decedent's power "of changing the relative interests of the different beneficiaries at any time by reducing the interest of some and adding to the interests of others" became incapable of being exercised again for want of more than one beneficiary. We are, therefore, of the opinion that when the decedent exercised the power to change the proportional shares of the beneficiaries by requiring the trustee to make a first and last distribution to the five brothers, thus eliminating them as beneficiaries of the trust, the power was exhausted, because such a power, once having been exercised in the manner in which the decedent in the instant case exercised it, was, by its very nature, incapable of being exercised again. Therein lies the similarity between the instant case and such cases as *Lloyd's Estate* v. *Commissioner*, 141 Fed. (2d) 758, and *Day* v. *Commissioner*, 92 Fed. (2d) 179, because the power in each of the latter cases, once having been exercised, was, by its very nature, incapable of being exercised again. It was also the case in *Morton* v. *Commissioner*, 109 Fed. (2d) 47,[3] although there is language by the court which has caused that case to be cited as holding to the

[3] Noted in 18 Tex. L. Rev. 527 (1940). Cf. *State Street Trust Co.* v. *Crocker*, 306 Mass. 257; 28 N. E. (2d) 5; 128 A. L. R. 1166 (1940), noted in 20 Boston U. L. Rev. 736; 41 Col. L. Rev. 155; 35 Ill. L. Rev. 976.

contrary. We, therefore, hold that the decedent in this respect did not have the power to alter, amend, or revoke the trust at the time of his death in the sense required by section 811 (d) (2) of the Internal Revenue Code. Cf. *Estate of Flora W. Lasker*, 47 B. T. A. 172; affd.; 141 Fed. (2d) 889.

The respondent cites three cases—*Union Trust Co. of Pittsburgh* v. *Driscoll*, 138 Fed. (2d) 152; certiorari denied, 321 U. S. 764; *Chickering* v. *Commissioner*, 118 Fed. (2d) 254; certiorari denied, 314 U. S. 636; and *Guggenheim* v. *Helvering*, 117 Fed. (2d) 469—which he asserts compel an opposite result. In all of these cases the expressed power may have been broad enough to permit the exercise thereof on more than one occasion. However, the cases are distinguishable from the instant case because in none of the cases cited by the respondent was there ever an exercise of the power during the lifetime of the settlor. The decisions in those cases turned, generally speaking, on the ground that the trusts therein involved contained a provision which rendered the enjoyment of the property subject to a power in the transferor to "alter, amend or revoke" within the purview of what is now section 811 (d) (2) of the Internal Revenue Code. They did not involve the question of whether a single exercise of the particular powers therein involved would have exhausted those powers.

*Mellon* v. *Driscoll*, 117 Fed. (2d) 477; certiorari denied, 313 U. S. 579, and *Welch* v. *Terhune*, 126 Fed. (2d) 695; certiorari denied, 317 U. S. 644, are not authority to the contrary. The distinction between the holding in those cases and the instant one is pointed out in *Estate of Harry Holmes*, 3 T. C. 571, 577, as follows:

Thus in *Mellon* v. *Driscoll* the exercise of the power of revocation or termination meant a new conveyance of the corpus to the beneficiaries. In the instant case the remainder interests in the trust corpus, as well as the right to receive the income during the term of the trust, subject to the right of the trustee to either distribute or accumulate the income for the named beneficiaries, were irrevocably vested in the three beneficiaries by the trust indenture itself, and an exercise by the settlor of his power to terminate the trust meant only an acceleration of the time of enjoyment. The settlor reserved no power whatsoever to change the portions of the corpus which each beneficiary was to receive.

　　　*　　　*　　　*　　　*　　　*　　　*　　　*

But in transfers made on or prior to June 22, 1936, where the settlor has retained only a power to terminate the trust and has retained no power to revest in himself or in his estate any part of the trust corpus or to change or alter the disposition of the trust corpus already given to the beneficiaries under the terms of the trust indenture, but only to accelerate the time of its enjoyment, we do not think the value of the trust corpus is includible under section 811 (d) (2), Internal Revenue Code, or any other provision of the Internal Revenue Code. *　*　*

Respondent further contends that the community one-half of the corpus is includible in decedent's estate "because of the possibility of reverter," arguing that:

"If the contentions of petitioner are correct, that is, that decedent's wife was the sole beneficiary at decedent's death, it would appear that if she had predeceased her husband, her interest in the trust would have lapsed for want of a beneficiary under the last paragraph of the trust instrument, which is as follows:

> On the death of any of the beneficiaries the interest of the deceased shall lapse and go to the other beneficiaries in proportion to their respective interests as above recited.

In such event such corpus would have reverted to the decedent.

If the respondent's position in this respect were limited to the contention that the community one-half of the corpus is includible in decedent's estate solely because of the possibility of reverter, our recent decision in the case of *Estate of Joseph K. Cass*, 3 T .C. 562, wherein we stated at page 565 that "Notwithstanding the discussion found in *Estate of Ellen Portia Conger Goodyear*, 2 T. C. 885, and some of our other cases, of the probability of a reversion of the trust assets of the grantor, we do not think that the doctrine of the *Hallock* case [4] applies where there has been no express retention by the grantor of any reversionary rights in the trust assets," would require a decision against the respondent. And, were it not for the presence of the clause quoted above relating to the death of any of the beneficiaries, it seems clear that such case as *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, rather than either the *Hallock* case or *Klein* v. *United States*, 283 U. S. 231, would be controlling in the instant case. But, the respondent's position also involves the contention that, because of the presence of the clause quoted above relating to the death of any of the beneficiaries in the trust instrument, the settlor's wife had to survive the settlor before she or her estate would be entitled to receive anything under the trust, even though she was the sole remaining beneficiary. We can not agree with respondent's contention. We are of the opinion that upon the creation of the trust the settlor's wife had a vested interest in fee [5] in the corpus of the trust, subject to being divested only if she died at a time when some one of the other named

---

[4] 309 U. S. 106.

[5] Words of inheritance are not necessary in an instrument creating a trust in order to pass an absolute interest in personalty. *First & American Nat. Bank of Duluth* v. *Higgins* (Minn. 1940), 208 Minn. 295; 293 N. W. 585; 1 Scott on Trusts § 128.1 and § 128.2. Cf. *Matter of Forde*, 286 N. Y. 125; 36 N. E. (2d) 79 (1941), and other cases collected in footnote #9, p. 668, vol. 1, Scott on Trusts. See also, Art. 1291 of the Revised Civil Statutes of Texas, which provides as follows:

> Every estate in lands which shall thereafter [hereinafter] be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law.

And the following Texas cases decided thereunder: *City of Stamford* v. *King* (Tex. 1940), 144 S. W. (2d) 923; *Gulf Prod. Co.* v. *Continental Oil Co.*, 132 S. W. (2d) 553, 563; *Laborde* v. *First State Bank & Trust Co.*, 101 S. W. (2d) 389; *Rae* v. *Baker*, 38 S. W. (2d) 366.

beneficiaries were living. That condition subsequent was wholly unrelated to the settlor's death. When all the other beneficiaries were eliminated and the settlor's wife became the sole beneficiary, her interest became indefeasible. The settlor did not intend the clause relating to the death of any of the beneficiaries to have any operation except in a case where a named beneficiary died leaving at least one other named beneficiary living at the time. The purpose of requiring that the interest of a beneficiary should lapse upon his death was manifestly to cause his share to be divided among the remaining living beneficiaries and not either to have the share of the deceased beneficiary pass to his estate while other beneficiaries lived, or to enable the settlor to reacquire the whole interest in that which he had given away completely, as would be the case if the share of a sole surviving beneficiary were to lapse upon death prior to the settlor's death. The elimination of all the other beneficiaries can not be made the ground for holding that the wife's interest would lapse if she predeceased the settlor or for imposing a new condition, subsequent or precedent, on the wife's interest. The decision by the Supreme Court of Pennsylvania in the case of *In re Haydon's Estate*, 6 Atl. (2d) 581, fully supports this conclusion. There the testator made bequests of $50,000 to each of his two daughters. The gift to Mary read as follows: "I give my daughter, Mary * * * Fifty thousand dollars to be placed in trust * * * the interest to be paid her semi-annually during her life. If she dies without issue the said sum * * * will revert to her sister Bertha * * *." Immediately preceding this gift there was a like provision bequeathing $50,000 to the other daughter, Bertha, with a gift over to Mary in case Bertha should die without issue. Both daughters survived the testator. Bertha died intestate and without issue on March 14, 1925. Then Mary died without issue on October 17, 1937. The court did not hold that Mary's interest lapsed. On the contrary, it held Mary's interest was a fee and not a mere life estate and that Mary's interest passed to her estate and not under the residuary clause of her father's will. The court specifically rejected the contention that when one daughter had died and her share passed to the survivor, and the surviving daughter then died without issue, the second gift over would operate to divest the latter's interest and vest it in the estate of the daughter who had been dead for many years. The court in the *Haydon* case stated at page 584 of its opinion that "the sole purpose of the gifts over was to vest the entire estate in the survivor. Once this purpose had been accomplished he had no desire to further control the disposition of the property. The reason for applying the gifts over then ceased to exist * * *." So, in the instant case, with the elimination of all

the settlor's brothers as beneficiaries, the reason for applying the gifts over or for holding that the wife's interest would lapse upon her death prior to the settlor's death, ceased to exist. The death of the settlor's wife prior to the settlor's death would not, in the instant case, divest the wife of her interest in the trust. *Tapp* v. *Baskin* (Ky., 1932), 55 S. W. (2d) 29. We are, therefore, of the opinion on the first issue that the community one-half of the corpus of the trust created by the decedent on February 3, 1927, is not includible in his estate.

We now turn to the second issue in this case, namely, whether, and in what amounts, attorneys' fees and executors' commissions which have been paid and which it is anticipated will be paid before the administration of the estate is concluded, are allowable deductions. This question is governed by section 812 (b) (2) of the Internal Revenue Code.[6]

This issue is divided into two parts. The first of these concerns the deductibility of the sum of $2,251.22, which is equal to one-third of the executors' commissions allowable under articles 3689 and 3690 of the Revised Civil Statutes of Texas. That much is admitted by both petitioner and respondent. The latter claims that, inasmuch as these fees in the amount of $2,251.22 were tendered to and waived by Belle L. S. Burney, as executrix, they became a part of the corpus of the estate for distribution to the beneficiaries under the will of the decedent. Petitioners claim that, inasmuch as Belle L. S. Burney declined to accept her share of the executors' commissions, Henry P. Burney and Elmer Renfro, as the two remaining executors under the will of I. H. Burney, deceased, have the right, under an agreement between them and the legatees and devisees under the will of I. H. Burney, deceased, providing that "All commissions that said Executor-Trustees are entitled to receive * * * shall be divided between them in such proportion as may be agreed upon by them, or in case of disagreement, by a majority of the then qualified and acting Executor-Trustees," to divide the $2,251.22 between themselves and that the amount so divided is deductible by the estate. In the case of *Estate of John E. Cain, Sr.*, 43 B. T. A. 1133, the Board stated at page 1142: "The statute does not require that the counsel fees and expenses in question actually be

---

[6] SEC 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

\* \* \* \* \* \* \*

(2) for administration expenses,

\* \* \* \* \* \* \*

as are allowed by the laws of the jurisdiction * * * under which the estate is being administered, * * *

paid; it is sufficient that the amount of the counsel fees and expenses have been agreed upon and will be paid. *William Rhinelander Stewart, Jr., et al., Executors,* 31 B. T. A. 201." With respect to the $2,251.22, it is evident that the amount has been correctly computed in accordance with the applicable statutes of the State of Texas and it is not disputed that the $2,251.22 will be paid to Henry P. Burney and Elmer Renfro, executors. These facts are sufficient to permit its deduction.

The second part of this issue concerns the asserted right of the petitioners to deduct at least an additional amount of $5,000 which, in the opinion of Henry P. Burney, executor, is a reasonable estimate of the amount of executors' commissions and attorneys' fees which will be incurred and paid subsequent to November 30, 1943, and before the administration of the estate is completed. Respondent disagrees that $5,000 is a reasonable estimate.

The applicable provision of the Federal estate tax laws, section 812 (b) (2) of the Internal Revenue Code, permits the deduction of such administration expenses as are allowed by the laws of the State of Texas.[7]

Section 81.29 of Regulations 105, relating to the estate tax under the Internal Revenue Code, allows the deduction of such items as these, "though the exact amount thereof is not then known, provided it is ascertainable with reasonable certainty, and will be paid."

We are of the opinion that additional attorneys' fees of a deductible nature, for example, those in connection with the present proceedings, and additional executors' commissions allowable under the Texas statutes, will be incurred and paid and that the sum of $5,000, under the facts in this case, represents a fair estimate of the amount of those additional attorneys' fees and executors' commissions. We, therefore, hold that the $5,000 claimed as a further deduction in this respect may be allowed. *Estate of John E. Cain, Sr.,* 43 B. T. A. 1133.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MELLOTT, *J.,* dissents.

---

[7] Article 3689 of the Revised Civil Statutes of the State of Texas provides as follows :

"Executors and administrators shall be entitled to receive and may retain in their hands five per cent on all sums they may actually receive in cash, and the same per cent on all sums they may pay out in cash in the course of their administration."

Article 3690 provides for certain exceptions to the general rule stated by article 3689 and article 3691 covers reasonable attorney's fees by providing as follows :

"Executors and administrators shall be allowed all reasonable expenses necessarily incurred by them in the preservation, safe-keeping and management of the estate, and all reasonable attorney's fees, that may be necessarily incurred by them in the course of the administration."