ESTATE OF ADDIE LUDLOW BINGHAM (ALSO KNOWN AS ADDIE L. BINGHAM), DECEASED, BY HELEN BINGHAM SALZER, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6719.   Promulgated December 10, 1946.

*Caldwell Martin, Esq.*, and *M. B. Holt, Jr., Esq.*, for the petitioner.
*Felix Atwood, Esq.*, and *L. S. Pendleton, Esq.*, for the respondent.

#### OPINION.

DISNEY, *Judge*: This cause involves estate tax. A deficiency was determined in the amount of $28,199.73, but only a portion thereof

is now involved. The only question remaining for determination is whether the decedent, by the exercise of a power retained under a trust instrument set up by her, exhausted such power, or whether she retained such power at the time of her death, so as to cause inclusion of trust property in her estate.

All facts were stipulated. We adopt the stipulation by reference and find the facts therein set forth. However, because of concessions made, eliminating some of the original issues, it is considered unnecessary to set forth all of such facts in considering the sole remaining issue. So far as necessary here, the facts may be summarized as follows:

Addie Ludlow Bingham died at Denver, Colorado, February 4, 1942. Her will was admitted to probate by the County Court of the City and County of Denver, letters testamentary being issued to Helen Bingham Salzer, petitioner herein.

On July 10, 1922, the decedent executed a written declaration of trust. Paragraphs 3, 7, and 11 thereof provide as follows:

3. Said trust shall continue during the lifetime of my daughter Helen Bingham Miller, and her daughter, Caroline Ludlow Miller, and for the period of twenty-one (21) years thereafter, except that the maximum duration of this trust shall be shortened in case of the happening of either of the following contingencies:

(a) If during my lifetime, my said daughter Helen Bingham Miller, and her children and descendants of children shall all die, then said trust shall terminate and said trust estate shall be assigned, transferred, conveyed and returned to me by said trustee.

(b) If my said daughter, Helen Bingham Miller, and her children and descendants of children shall all die before the expiration of the maximum period of this trust, and part or all of them shall not die until after my death, then said trust shall terminate and, unless I shall hereafter make provision to the contrary, as provided in paragraph eleven hereof, said trust estate shall become the property of the heirs at law of my said daughter by affinity and consanguinity, according to the laws of descent of the State of Colorado in force at the date of her death, except that no person not related to me by consanguinity shall be held or deemed to be an heir by consanguinity of my said daughter.

\*        \*        \*        \*        \*        \*        \*

7. Upon the expiration of said period of twenty-one years (if said trust shall not have been previously terminated as herein provided), the beneficiaries then entitled to the revenue from said trust estate shall become the owners of said trust estate and said trustee shall thereupon convey, assign and deliver the same to such beneficiaries.

\*        \*        \*        \*        \*        \*        \*

11. I expressly reserve the right at any time hereafter to change the beneficiary or beneficiaries who shall be entitled to receive the corpus of the trust estate upon the termination of this trust, anything herein to the contrary notwithstanding. Such change shall be made only by instrument or instruments in writing, subscribed by me and filed with said trustee, or successor in trust. No change in the disposition of the corpus of said trust estate to be made upon the termination of said trust shall in any manner affect the disposition of the income there-

from as herein provided, nor shall any such change be construed as otherwise modifying or affecting any of the terms or conditions hereof.

On July 30, 1936, the decedent executed an instrument entitled "Modification of Declaration of Trust," whereby she modified and changed paragraph 3 (b) of the declaration of trust. The material language of the modification is as follows:

Now, THEREFORE. Under the powers reserved in said Declaration, the undersigned hereby revokes paragraph 3 (b) of said Declaration and hereby substitutes the following in lieu thereof:

"3 (b). If my said daughter Helen Bingham Miller and her children and descendants of children shall all die before the expiration of the maximum period of this trust, and part or all of them shall not die until after my death, then said trust shall terminate and said trust estate shall become the property of my heirs at law according to the laws of descent of the State of Colorado then in force."

In all other respects said Declaration is hereby ratified and confirmed.

Neither the declaration of trust nor the modification thereof was made by the decedent in contemplation of her death. The modification of declaration of trust was executed by the decedent in order to provide definitely that, in the event the contingencies mentioned in paragraph 3 (b) of the declaration of trust should occur before the entry of a final decree of divorce, in a divorce action then pending, between her daughter Helen Bingham Salzer and her husband, the trust estate would go to decedent's own heirs, among whom the daughter's husband would not be included under Colorado law. At the date of her death the decedent was 85 years of age. Her sole surviving descendants at that date were her daughter, Helen Bingham Salzer, born in 1897, and the latter's three children, Caroline Miller Warner, born in 1922, Victoria Loring Miller, born in 1925, and Marcella Bingham Miller, born in 1929. On May 15, 1944, a son was born to Caroline Miller Warner.

It is agreed that the value of the corpus of the trust, so far as includible in decedent's estate, is $25,206.80, which is the value determined by deducting from the entire trust corpus (consisting of a note of a value of $233,333 and accrued interest of $1,101.85) the value of the life estate of Helen Bingham Salzer, and the interests of her children living at the time of decedent's death.

Although the deficiency was determined upon the theory that the value of the trust corpus, less the value of the outstanding life estate, was includible in gross estate, under the provisions of section 811 (c) and (d), Internal Revenue Code, upon brief the only question presented by the respondent is, "Whether the deceased until her death retained the power to change the beneficiaries entitled to the corpus of the trust upon the termination thereof." In short, the difference now remaining between the parties is merely whether the decedent, by the instrument

dated July 30, 1936, modifying and changing the provisions of paragraph 3 (b) of the declaration of trust, exhausted, as the petitioner contends, the right reserved in section 3 (b) to change the beneficiary, or beneficiaries, entitled to receive the corpus; or whether, as the respondent contends, the instrument of July 30, 1936, did not exhaust such power and the decedent died possessing it and therefore, in the respondent's view, there should be included in gross estate the agreed value thereof, less the interests of the daughter and her descendants, under section 811 (d) (2), Internal Revenue Code.[1]  That section provides for taxation of any transferred interest "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power,  *  *  *  to alter, amend, or revoke  *  *  *."  Did the petitioner die possessed of such power?

After much study, we have come to the conclusion that she did. The parties are in agreement that state law controls as to the rights of the decedent under the trust instrument. Colorado, the situs of this matter, appears to have no statutory provisions directly applicable here, but does have a statute, section 1, chapter 159, Colorado Statutes Annotated 1935, providing that the common law of England applicable and of general nature shall be in force until repealed; and the courts of that state follow the common law. *Chilcott* v. *Hart*, 45 Pac. 391; *Rains* v. *Rains*, 46 Pac. (2d) 740. It is pertinent, therefore, to examine the common law as to whether exercise of a power exhausts it, as petitioner contends happened in this case. The petitioner, in the contention that the power had been exhausted, relies primarily upon *Day* v. *Commissioner*, 92 Fed. (2d) 179, and *Horatio Gates Lloyd*, 47 B. T. A. 349, wherein we followed the *Day* case, and two English authorities, Sugden on Powers, and Farwell on Powers, which are cited to show the common law, above seen to apply in Colorado. The gist of the citations from Sugden and Farwell is that a power once executed can not be revoked, unless the power of revocation is retained by the instrument executing the power. We have examined these authorities with care, we believe, and, although the

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

    *          *          *          *          *          *          *

(d) REVOCABLE TRANSFERS.—

    *          *          *          *          *          *

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

quotations adduced are to the above general effect, further reading of these authorities indicates to us that the rule is not so positive as petitioner argues. Our conclusion is that a power is exhausted not by any and every exercise thereof, but is exhausted by a power which vests in some one the subject matter of the power, without a reservation of a future power to deprive him of it. Indeed, the quotation which petitioner cites from Farwell on Powers (3d ed.), p. 306, after reciting that a power once executed can not be revoked, unless a power of reservation be reserved by the instrument executing the power, and citing an English case, goes on to say:

\* \* \* The principle of this decision—namely, that an instrument executing a power must expressly reserve any powers which may be intended to be retained—is an express authority for the rule above stated, which is indeed an illustration of the general principle that a deed once executed cannot be revoked, unless it reserves a power of revocation. \* \* \*

In other words, the thought expressed by the authority is merely that one can not execute a deed or other instrument (e. g., executing a power) thereby transferring property or rights to some one, and later deprive him of those rights, unless the grantor has reserved power to take them away. That, of course, is a primary principle of the law of conveyance and of contracts. We find that Sugden on Powers (8th ed.), p. 72, in substance states that the partial execution of a power does not release it, and, on page 84, that such partial execution does not release as to different lands. On page 272, we find the following:

Powers of appointment and revocation need not be executed to the utmost extent at once, but may be executed at different times over different parts of the estate, or over the whole estate, but not to the fullest extent of the power. \* \* \* So where a man has a general power of appointment he may exercise it at several times, and appoint an estate for life at one time, and the fee at another time. \* \* \* So powers of jointuring, &c may in like manner be executed at different times, provided that the party do not in all the executions exceed the limits of the power.

Again, on the same subject, Farwell on Powers (3d ed.), p. 36, reads as follows:

In *Digges Case* (1 Co. Rep. 173), Christopher Digges had powers "at any time during his life" with certain consents, to revoke certain uses. It was resolved that he might revoke part at one time and part at another, and so of the residue, until he had revoked all: for the words "at any time" amount to as much, and are as if he had said "from time to time and as often as he shall think good." As, if a man lease twenty acres of woods and grant that the lessee may fell the timber trees at any time during the term, he may fell part at one time and part at another (and see Co. Litt. 237a).

Thus we see that a modification of a power is possible without exhausting it, if another exercise of it does not deprive anyone of rights or properties given to him under the first exercise. This principle is

what distinguishes both the *Day* case and the *Lloyd* case, for in each of those cases the original exercise of the power transferred property rights and vested them in a certain person or persons, and, obviously, it seems to us, it is elementary that such persons could not later be deprived of such property rights (unless of course in the instrument so exercising the power, a power to revoke or amend that instrument had been reserved). *Estate of I. H. Burney*, 4 T. C. 449, is not only distinguished for the same reason, but the language thereof, p. 457, in fact points to the true rule as above announced, for there we said:

* * * We are, therefore, of the opinion that when the decedent exercised the power to change the proportional shares of the beneficiaries by requiring the trustee to make a first and last distribution to the five brothers, *thus eliminating them as beneficiaries* of the trust, the power was exhausted, because such a power, once having been exercised in the manner in which the decedent in the instant case exercised it, was, by its very nature, *incapable of being exercised again.* Therein lies the similarity between the instant case and such cases as *Lloyd's Estate* v. *Commissioner*, 141 Fed. (2d) 758, and *Day* v. *Commissioner*, 92 Fed. (2d) 179, because the power in each of the latter cases, once having been exercised, was, *by its very nature, incapable of being exercised again.* * * * [Italics supplied.]

In the instant case, the beneficiaries who were to take at the end of the trust, upon the termination of two lives and 21 years, were not *eliminated as beneficiaries* by the exercise on July 30, 1936, and the power so exercised was not "by its very nature, incapable of being exercised again." Logic dictates that only in such cases is the power exhausted. We find in the instant case a situation clearly distinguishable from those in the *Day* and *Lloyd* cases.

Here the exercise of the power on July 30, 1936, in no reasonable sense exhausted it. The exercise was only as to the contingency, obviously remote, which would arise in case decedent's daughter, her children and descendants of children should die before expiration of the maximum period of the trust and the further contingency that some or all of them should not die until after the decedent. The decedent had a daughter, who had three young daughters, one of whom had, after the exercise of the power, borne a son. The exercise of the power, in short, was a contingent exercise highly improbable of any effect. Moreover, it left untouched the other uncontingent, positive, and primary provision of the trust instrument, in section 7, that upon the expiration of the trust at the end of the period of 21 years [2] the beneficiaries then entitled to the income would take the trust corpus.

---

[2] The language of section 7 is inept, but the "period of twenty one years" can refer only to the maximum period of the trust at the end of 21 years after death of decedent and her daughter, referred to in section 3. The expression is nowhere else used in the instrument and to construe section 7 otherwise than referring to the termination of the trust after the two lives and 21 years would not only disserve justice but sound rules of interpre-

We see the decedent, then, still empowered, under section 11, to change the beneficiary or beneficiaries so entitled to the trust at the termination thereof, save only in the contingency of termination prior to the primary term. To hold that property or rights had by virtue of the exercise on July 30, 1936, so vested in the decedent's heirs that, without reservation of right to revoke, a later exercise could not affect other beneficiaries, that is, whoever might be income beneficiaries at the later date, would be altogether unrealistic, a rule without basis in reason. We find no such rule, but its negation, in our reading of the English authorities cited. In *Morton* v. *Commissioner*, 109 Fed. (2d) 47, the court declined to apply a flat rule that any exercise of a power exhausts it. In *Wilson* v. *First National Trust Co.*, 166 Pac. (2d) 593 (Col. D. C. App.), it is held that where a trust instrument may be modified or revoked "at any time and from time to time" one exercise does not exhaust it. As above seen, there is good reason to hold that "at any time" is equivalent to "from time to time." That is the likelier conclusion from reference to "any change" made "by instrument or instruments." We think and hold that exhaustion of power by one exercise was not intended by the decedent here. We note that in *In Re Goodels Estate*, 53 D & C 13 (Pennsylvania District and County Court cases), it is held that a right to modify or amend may be repeatedly exercised "if there is no language in the trust which expressly or by necessary implication restricts the right to one exercise thereof." We find no such language or implication here, but the opposite.

There is ground, moreover, for the view that the decedent did reserve power, in the instrument of July 30, 1936, further to change beneficiaries of corpus; for therein it was expressly stated: "In all other respects said declaration is hereby ratified and confirmed." Since the only change made was expressly as to section 3 (b) of the declaration of trust, it is seen that section 11 is expressly left intact, with its express reservation of right at any time to change beneficiaries. The particularity of the provisions of the instrument of July 30, 1936, carefully revoking section 3 (b) only, substituting language in lieu thereof and expressly reaffirming the original declaration otherwise, leads us to the conclusion that there was in effect reservation of power further to name beneficiaries. We do not, however, primarily base our conclusion here on this thought, but upon the more general rule above expressed, in effect, that exhaustion of power is an elementary question of inability (in the absence of express reservation of power to revoke or amend) to deprive a grantee of his grant. We conclude and hold that the decedent died possessed of the power to alter, amend, or revoke as to the trust instrument, within the intendment of section 811 (d) (2), Internal Revenue Code.

The petitioner contends further, however, that such statute, as applied to a trust set up in 1922 prior to its adoption, is unconstitutional. That question has already been answered in the negative. *Chickering* v. *Commissioner*, 118 Fed. (2d) 254; *Porter* v. *Commissioner*, 288 U. S. 436; *Stewart W. Bowers*, 34 B. T. A. 597; *Millard* v. *Maloney*, 121 Fed. (2d) 257. We therefore hold that the statute is not unconstitutionally applied here.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

