In the Matter of the Judicial Settlement of the Account of Proceedings of the BANK OF JAMESTOWN, as Executor, etc., of MICHAEL L. WOODS, Deceased.

KATHERINE C. WOODS and ROMAINE GIBSON, Widow and Next of Kin of MICHAEL L. WOODS, Deceased, Contestants, Appellants; BANK OF JAMESTOWN, as Executor, etc., of MICHAEL L. WOODS, Deceased, Respondent.

Fourth Department, May 12, 1937.

*J. Russell Rogerson,* for the appellants.

*John E. Durkin,* for the respondent.

EDGCOMB, J. The Bank of Jamestown, the executor of decedent's estate, has been allowed full commissions based upon the total value of the estate. Going to make up this amount is certain real estate, known as the Wintergarden Theatre in the city of Jamestown, appraised — by whom we are not told — at the sum of $110,000, and a mortgage of $33,750 on the Southwestern Theatre. The contestants challenge the right of the executor to fees based upon the value of these two items.

Decedent bequeathed the residue of his estate, after the payment of his debts and certain specific legacies, to the Bank of Jamestown, in trust for certain specified purposes. By an agreement subsequently made, and duly approved by the surrogate, the terms of the trust were modified in certain respects. The executor is directed, by the final decree, to turn the balance of the funds and assets remaining in its hands over to itself, as trustee, to be administered and distributed in accordance with the terms of the indenture of trust above mentioned. Among the assets to be so turned over to the trustee are the Wintergarden Theatre and the

mortgage above mentioned. Neither has been sold or turned into cash; both have been held intact by the executor. While the will contained a power of sale, the power was never executed. No need therefor ever arose. The rents from the real estate and the interest on the mortgage were collected by the executor, but the identity of the property was preserved, and the securities themselves were transferred to the trustee. Under these circumstances, is the bank, as executor, entitled to commissions on these two items?

The commissions of an executor are fixed by section 285 of the Surrogate's Court Act. Certain named percentages are allowed " for receiving and paying out " specified sums of money. While the mortgage has never been converted into cash, its value is considered as money in computing the executor's commissions. (Surr. Ct. Act, § 285, subd. 5.)

Not so, however, with the real property. Title to it vests by mere operation of law, and passes directly without any act on the part of the executor. Respondent, therefore, is not entitled to commissions upon the value of this unsold real estate. (*Matter of Salomon*, 252 N. Y. 381, 383, 384; *Matter of Wanninger*, 120 App. Div. 273; affd., 190 N. Y. 527.)

Appellants also object to the additional allowance of $1,058.33, awarded the executor for collecting the rents from the Wintergarden Theatre.

This award was made pursuant to the provisions of subdivision 9 of section 285 of the Surrogate's Court Act, which prescribes that where an executor is " entitled or required to collect the rents of and manage the real property, he shall be allowed and may retain five per centum of the rents collected therefrom in addition to the commissions herein provided." This extra allowance cannot properly be made unless it appears that the executor is entitled or required to do two things, (1) to collect the rents, and (2) to manage the property. Appellants urge that the executor is not entitled to this additional allowance because it was not entitled to and never did manage the theatre.

It appears without contradiction that the bank, in its capacity as executor, collected the rents, paid the taxes, interest on the mortgage, and insurance premiums, and made some repairs on the building. It was not only entitled but required so to do. If the tenant had defaulted on his lease, and had surrendered possession of the property, the duty would have devolved upon the executor to find a new tenant. Under the power of sale given under the will, the executor, had it been necessary to sell the property for the payment of debts, could have so done.

Under all these circumstances, was the executor entitled to manage this property within the meaning of subdivision 9 of sec-

tion 285 of the Surrogate's Court Act, notwithstanding the fact that the theatre was in the hands of a lessee under a long term lease?

The word "manage" is a broad term; in general it means to have the subject under one's control and direction. It is said in *City of Newburgh* v. *Dickey* (164 App. Div. 791, 792): "Manage and control are somewhat synonymous words. Manage means to direct, control, govern, administer or oversee."

Within the broad definition of the term, it may well be said that the executor was entitled to manage this real property. That being so, the additional allowance for the collection of these rents must be upheld.

Contestants also oppose the allowance of $4,400 made the executor's attorney. That the attorney rendered valuable services to the estate cannot be doubted. Through his co-operation disputed matters arising during the course of the administration were adjusted, and the estate was saved expensive and vexatious litigation; no criticism can be made of the manner in which he discharged his duties. We would have little difficulty in sustaining the award made to him were it not for the fact that on July 1, 1936, he rendered an itemized bill to the executor in the sum of $1,500 for services to date, and when that bill was paid he signed a receipt in which he stated that the money received was "in full payment of balance legal services up to final accounting." In the final account filed by the executor, and which was either prepared or supervised by the claimant, we find an item in Schedule "C," expenses of administration, as follows: "July 7, John E. Durkin, balance services up to final acct." This is indicative of the fact that the executor down to December, 1936, when the account was filed, did not consider that its attorney was entitled to any further pay, except for services in connection with the final accounting.

Claimant's services in connection with the preparation and filing of the final account and the judicial settlement were not worth $2,900. The claimant makes no such assertion. The account is not long or intricate. No questions were raised on the accounting, except those discussed here. In his itemized bill for services performed since July 1, 1936, most of the matters enumerated have nothing to do with the final account or with its settlement.

If claimant is to be held to his statement in the receipt that the payment made on July seventh was in full for services up to the final accounting, the allowance made by the surrogate cannot stand.

It is true that a mere receipt is not conclusive evidence against the signer, in the sense that it cannot be assailed. A receipt, which

is not embodied in a contract, is nothing more than a declaration or admission in writing. (*Ryan* v. *Ward*, 48 N. Y. 204, 208.) It is *prima facie* evidence of the receipt of money for the purpose specified, and the burden of qualifying its effect, or attacking its correctness, rests on its signer. (*Danziger* v. *Hoyt*, 120 N. Y. 190, 194.)

There is no claim here that the receipt was executed under fraud or duress. Claimant's explanation, by which he seeks to be relieved from the effect of his admission in the instrument, is found in the statement contained in his affidavit that the services rendered after July 1, 1936, were worth much more than $1,500, and that when the first bill was presented, and when the receipt was signed, the executor anticipated that no further legal work in connection with the estate would be required until the final accounting, but that such prediction did not turn out to be true. This explanation is not sufficient to explain or contradict the receipt, or overcome the *prima facie* evidence which it furnished of the agreement on the part of the claimant that the $1,500 which he had been paid would fully compensate him for all services up to the time of the final accounting. If the claimant made a bad bargain, that was his misfortune. He was not deceived by the executor. He knew the situation better than any one else, the executor included. If he was unwilling to abide by his agreement, he should never have signed the receipt. Even though it may result in his being underpaid for his services, he should be required to stand by his contract.

The record is practically silent as to the amount of time spent by the attorney or the work done by him in connection with the final settlement, and there is no basis upon which we can determine the value of such services. It would seem necessary, therefore, to remit the matter to the surrogate to determine that question.

For the reasons stated, we think that the decree should be modified by reducing the fees of the executor to the sum of $2,811.13, and the amount allowed to the attorney for the executor to such sum as the surrogate shall determine, after a hearing, to be the fair value of his services in connection with the final accounting. The proceeding should be remitted to the surrogate to proceed in accordance with this opinion, with costs to the appellants payable out of the estate.

All concur. Present — SEARS, P. J., EDGCOMB, LEWIS and CUNNINGHAM, JJ.

Decree modified in accordance with the opinion and as modified remitted to the Surrogate's Court to proceed in accordance with the opinion, with costs to the appellants payable out of the estate.