Estate of J. Fred Lohman, Sr., Deceased, J. Fred Lohman, Jr. and Anna A. Lohman, Executors v. Commissioner.
Estate of J. Fred Lohman v. Commissioner
Docket No. 9487.
United States Tax Court
1947 Tax Ct. Memo LEXIS 77; 6 T.C.M. (CCH) 1071; T.C.M. (RIA) 47271; October 3, 1947
*77 1. Held, certain gifts were not made in contemplation of death. 2. Deduction of executors' fees approved. 3. Reasonable amount for attorney's fees not yet paid by executors or allowed by the court, fixed and allowed. Moses Kaplan, Esq., for the petitioners. J. Richard Riggles, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $73,690.43 in estate tax against the Estate of J. Fred Lohman, Sr., deceased. The issues involved are: (1) The value of 25 shares of common and 25 shares of preferred stock of National Drug Corporation, (2) whether the amount of $6,281.04, additional income taxes of decedent paid for the period ending November 15, 1940, is *78 deductible from gross estate, (3) whether gifts of $2,500 each to decedent's wife and son were made in contemplation of death, (4) whether the Commissioner erred in including in decedent's gross estate the value of two Firestone Tire and Rubber Company 3 1/2 per cent bonds, (5) value of the $10,000 mortgage on property located at 564 First Street, Brooklyn, New York, (6) the amount of allowable executors' fees and (7) the amount of attorney's fees deductible from decedent's gross estate. Findings of Fact J. Fred Lohman, Sr., died testate on November 15, 1940, a resident of Brooklyn, New York. His only son, J. Fred Lohman, Jr., and his widow, Anna A. Lohman, are the executors of his estate. By his will decedent devised and bequeathed to his wife his dwelling house or home together with all his furniture, household goods and paintings, pictures, silverware, carpets, rugs, musical instruments and furnishings therein contained. All his jewelry and clothing were given and bequeathed to his wife and son, share and share alike. He devised and bequeathed his business, conducted under the name of "Van Hoesen & Bro.," to his son. He made bequests of $5,000 and $2,500 to the Wartburg Orphans' *79 Farm School of the Evangelical Church and to the Lutheran Hospital of Manhattan, respectively. All the rest, residue and remainder, real and personal, after the payment of his just debts and funeral expenses, was devised and bequeathed as follows: an "equal undivided two-thirds part or portion thereof" to his wife and an "undivided equal one-third part or portion thereof" to his son. The will was probated in the Surrogate's Court in and for the County of Kings. The charitable bequests to the School and Hospital have been paid. On September 14, 1942, the executors filed in the first district of New York a Federal estate tax return. This return was prepared by J. Fred Lohman, Jr., without the aid of legal counsel. He is neither an attorney nor an accountant. The values of decedent's estate reported in the estate tax return and as determined by the Commissioner, are as follows: Value
Determined by
Reported
Commissioner
Realty
$ 69,500.00
$ 69,500.00
Stocks and Bonds
281,294.00
371,299.23
Mortgages, Notes
and Cash
663,248.89
669,740.19
Other Miscellaneous
Property
50,000.00
41,836.15
Total Gross Estate
$1,064.042.89
$1,152.375.57
*80 1. At the time of his death, the decedent owned twenty-five shares of common and twenty-five shares of preferred stock of National Drug Stores Corporation, represented by certificates dated May 6, 1920. These were not included as a part of the gross estate in the estate tax return. The Commissioner included such shares in gross estate, placing a value of $800 on the preferred shares and $175 on the common shares. The corporation was organized June 7, 1919 under the laws of Delaware. In January, 1928, the governor of that state declared such corporation inoperative and void as of March 16, 1927 for non-payment of taxes. 2. An audit of decedent's income tax return for the period January 1 to November 15, 1940, disclosed a deficiency in income tax in the amount of $6,281.04 with interest thereon in the amount of $1,587.81. This liability was paid by the estate by check dated June 22, 1945, in the amount of $7,868.85. 3. The decedent was born March 13, 1859 in New York, New York. On October 27, 1940, when decedent was over 81 years of age, he was admitted to Prospect Heights Hospital, Brooklyn, New York. At the time, he had fever and was suffering severe pains. The diagnosis was *81 acute urinary retention and hypertrophied prostate. After the immediate emergency of urinary retention was met, on October 31, 1940, a suprapubic cystotomy was performed under local anesthesia, that is, through the abdominal incision the bladder was opened, drained and irrigated and a suprapubic tube inserted. At the time of the operation a third degree, apparently benign, hypertrophy of the prostate gland was found. Because of decedent's advanced age and serious physical condition and consequent risk involved, the major part of the operation, that is, the removal of the large gland growth, was not undertaken at that time. After the first operation the decedent was given supportive measures, drained and treated. Improvement in his condition began on November 2, 1940, and thereafter his physical condition improved considerably. He appeared bright and cheerful. On November 7, he was permitted to sit on the edge of his bed for five minutes. On November 8 he sat up in a chair for three-quarters of an hour without any ill effects and did not feel tired. On November 9 he sat up in a chair for over two hours without ill effects and read the paper after he was put to bed. On November 10, he *82 sat up in a chair for two hours during the morning and for more than an hour during the afternoon without any ill effects. On November 11 and 12 he sat up for several hours during the morning and afternoon and walked a few steps from the chair to the bed. By November 12, his progress was so satisfactory, that it was determined by his attending physicians to perform the second stage of the operation the following day. On November 13, 1940, decedent's prostate gland was successfully removed. It was a difficult operation. The usual supportive treatment was given, but decedent failed to respond. On November 14, he became extremely weak and developed a condition of cardiac failure, and died at about four o'clock during the afternoon of November 15. It was the opinion of the attending physicians that the decedent had a ninety per cent chance of recovery in spite of his age. The diagnosis of the pathologist, upon examination of specimen of the removed gland, was "Adenocarcinoma of prostate." After decedent had been prepared on November 13 for the prostatectomy he appeared very worried and was told that the tube would be taken out. The decedent, prior to his death, was engaged in the business *83 of furnishing guards for the protection of ships. This business required a considerable amount of ready cash. In order to provide funds for the conduct of his business by his wife and son during the time he would be unable to sign checks, decedent, prior to his first operation, signed a check payable to his wife in the amount of $50,000. On November 12, 1940, decedent requested his son to write two checks, each in the amount of $2,500, one payable to his wife and the other to his son, which he signed and gave to his wife and son, respectively, stating in substance that the checks were given to them in appreciation of their constant attendance upon him and that although "it had been considered that he wasn't going to pull through * * * he was going to fool them." He appeared cheerful and indicated that he fully expected to recover. At the time the gifts were made, both the wife and son had independent incomes and were not in financial need. In the estate tax return there was reported a balance in decedent's account with the Brooklyn Trust Co. on the date of his death of $334,005.19. The Commissioner increased that amount to $334,921.12, representing the balance in such account *84 at the date of death of $279,921.12, plus the amount of $50,000 withdrawn October 31, 1940 by check to the order of Anna A. Lohman and plus $5,000 withdrawn November 13, 1940 by two checks each in the amount of $2,500 payable to the order of Anna A. Lohman and J. Fred Lohman, Jr., respectively. In the estate tax return, in answer to the question in the return, "Did the decedent, at any time, make a transfer of any amount of $5,000 or more without an adequate and full consideration in money or money's worth, but not believed to be includible in gross estate," the answer given is "no." The two gifts of $2,500 were not transfers made in contemplation of death. 4. In the estate tax return filed September 14, 1942, there was included in the list of bonds owned by the decedent at the time of his death three $1,000 bonds of Firestone Tire & Rubber Co., 3 1/2%, 1948. The Commissioner included two additional bonds of the same issue. The five bonds were coupon bonds, unregistered and bore no mark of identification to indicate whose property they were. The decedent and his wife each had a safety deposit box for their respective securities. The son had none and left the care of his securities *85 to his father. The five bonds were found in decedent's safety deposit box. Two of the five bonds belonged to the son. 5. The decedent owned a $10,000 mortgage upon real property known as 564 First Street, Brooklyn, New York. The mortgage was reported in the estate tax return at a value of $8,500. The Commissioner increased the value of this mortgage to $10,000. The executors received interest on the above mortgage on June 12, 1941, in the amount of $300, which interest was due May 1. Thereafter, but prior to October 15, 1942, a default in interest occurred, whereupon the executors caused foreclosure proceedings to be instituted by the service of summons and complaint, for which purpose an attorney was retained. On about October 15, 1942 an agreement was reached pursuant to which the mortgagor, in lieu of foreclosure, deeded the property to the estate on payment of $150 by the executors thereof. In connection with that property, the executors also made the following disbursements: October 15, 1942
For recording, stamps
$ 26.65
October 21, 1942
Balance due on furnace gas heater
188.42
November 6, 1942
Attorney fees
170.00
June 11, 1943
Title examination
84.00
Sept.-Oct., 1943
Repairs (electric, plumbing and painting)
300.42
*86 The property was vacant until after the repairs were completed in about September 1943. The mortgaged property consisted of a 22 X 100 foot lot and a three-story one family white stone dwelling. On November 15, 1940, properties of similar type in the vicinity of such property were selling at prices ranging from $7,500 to $9,000. The value on November 15, 1940, for estate tax purposes of the mortgage on the property involved was $8,500. 6. In the estate tax return executors' commission in the amount of $5,000 was claimed in computing the net estate. In computing the net estate, the Commissioner disallowed this deduction. No commission has been paid to the executors. In Schedule J of New York State transfer tax form 143, dated January 22, 1947, and bearing the signature of J. Fred Lohman, Jr., there is listed under "Funeral and Administrative Expenses" executors' commissions in the amount of $23,067.51, stated to have been computed "pursuant to Section 285 Surrogate's Court Act, divided equally between the executors." 7. In the estate tax return the amount of $5,000 was claimed as a deduction for attorney's fees. The Commissioner allowed the deduction of $500, plus $22.90 disbursements. *87 The executors paid about $500 for legal services rendered in connection with the estate. Later the executors employed other legal counsel for the purpose of closing the estate. In Schedule J of the New York State transfer tax form 143, heretofore referred to, there is listed under "Funeral and Administrative Expenses" the item "Attorneys fees and disbursements" in the amount of $15,000. No decree has been entered in the Surrogate's Court fixing the amount of attorneys' fees. A reasonable allowance for attorneys' fees in connection with the administration of the estate is $15,000. In computing the net estate, petitioners are entitled to an additional deduction of $14,500 for attorney fees. Opinion VAN FOSSAN, Judge: 1. The Commissioner included in decedent's gross estate 25 shares of common and 25 shares of preferred stock of National Drug Stores Corporation at an aggregate value for all shares of $975. Such shares were not included in the gross estate of decedent reported in the estate tax return filed by the executors upon the ground that such shares were without value. The respondent, in his brief, concedes, upon the evidence submitted, that the shares had no value at the *88 date of decedent's death and, therefore, should not be included in the gross estate. 2. In the petition it was alleged that the Commissioner erred in not allowing the deduction from gross estate of income taxes in the amount of $7,868.85 for the period January 1 to November 15, 1940. The evidence shows that of the amount of $7,868.85 paid by the executors $6,281.04 was in payment of additional income taxes for the period involved and $1,587.81 was in payment of interest. The petitioners abandoned their claim for the deduction of the amount representing interest and the respondent, on brief, concedes that the amount of $6,281.04 paid for income taxes is allowable as a deduction from the gross estate for the purpose of computing the net estate. 3. The petitioners contend that the amount of the balance at date of death in the decedent's bank account in the Brooklyn Trust Company, Brooklyn, New York, as determined by the Commissioner should be reduced by $5,000 on account of two gifts of $2,500 each made by the decedent on November 12, 1940, three days before his death, to his wife and son. The respondent contends that the gifts are includible in gross estate as transfers made in *89 contemplation of death, under section 811 (c), Internal Revenue Code. [1]
Whether the gifts were transfers in contemplation of death *90 is a question of fact. Colorado National Bank of Denver, et al., Executors, v. Commissioner, 305 U.S. 23; United States v. Wells, 283 U.S. 102. The "test, despite varying circumstances, is always to be found in motive." It is "the dominant motive of the donor in the light of his bodily and mental condition" which is determinative. United States v. Wells, supra.The question is "whether the thought of death is the impelling cause of the transfer." City Bank Farmers Trust Co. v. McGowan, 323 U.S. 594. The total gross value of the decedent's estate as determined by the Commissioner was over $1,150,000. The two gifts involved amounted to $5,000. At the time of his death he had over $279,000 (exclusive of the $50,000 theretofore withdrawn for business purposes) in the bank account from which the two gifts of $2,500 were withdrawn. In addition, as shown by the estate tax return, he had deposits in two other banks in excess of $129,000. The gifts were not a material portion of his estate and were small in amount compared to his aggregate deposits of over $400,000 and his entire estate. At the time of the transfers the decedent *91 was over 81 years of age. But old age, by itself does not furnish the decisive test. United States v. Wells, supra; Estate of Fletcher E. Awrey, 5 T.C. 222; Rochester H. Rogers, 21 B.T.A. 1124; William L. Nevin, Executor, 16 B.T.A. 15, affirmed 47 Fed. (2d) 478, certiorari denied, 283 U.S. 835. The decedent, at the time of the transfers, was in a hospital. He had undergone an operation and a second operation was impending. One of the attending physicians, as witness for the respondent, testified that the condition of decedent was serious because of his age and, therefore, the major part of the operation was deferred because of the risk involved.he also testified, however, that the decedent's "whole physical condition improved very considerably" between the first and second stages of the operation; that decedent "was progressing satisfactorily" and was in good spirits; that the second operation was performed "in full contemplation that he would recover. Otherwise we would not have consented to the second operation. *92 We would not have done so unless we felt that he had at least a ninety per cent chance of recovery, in spite of his age." Whether the decedent knew, at the time he made the transfers, that the prostate gland would be removed the following day is not disclosed. The record indicates that he may not have known, for the hospital records show that decedent, appearing worried after having been prepared for the operation, was told that the tube inserted during the first operation would be removed. Although decedent apparently knew that he had been seriously ill, he was cheerful and on November 12 thought he was on the road to recovery. The son testified that his father, at the time he made the gifts, stated that he did so in appreciation of the faithful attendance of his wife and son upon him during his illness and hospitalization. The recognition by gifts of services and companionship is a motive associated with life rather than with death. Estate of Henry Monroe Springer, 45 B.T.A. 561, 568-9; Martha J. Bishop, Executrix, 14 B.T.A. 130. From a consideration of all *93 the evidence, it is our conclusion such motive was the dominant or impelling motive of decedent in making the two gifts of $2,500 each. Hence, such gifts were not transfers in contemplation of death within the meaning of section 811 (c), and we have so found. 4. It is contended that the Commissioner erred in including in decedent's gross estate two $1,000 3 1/2% per cent bonds of Firestone Tire & Rubber Co., maturing in 1948, on the ground that the son was the owner thereof. It is true that the bonds were unregistered, bore no mark of identification to indicate the owner thereof, and were kept in the safety deposit box of the decedent, together with three additional bonds of the same issue and other securities. The son, however, testified that he was the owner of two of such bonds and had purchased them with his own funds and that his father kept substantially all his securities for him. There is nothing in the record discrediting or refuting the testimony of the witness. We conclude that two of such bonds belonged to the son and that the Commissioner erred in including them in the gross estate of the decedent. 5. A real estate broker, who had for forty years conducted his business *94 in the neighborhood of the location of the mortgaged property, testified that, in his opinion, the fair market value on the basic date of the mortgaged property was $9,000 and that the value of the mortgage was about 66 2/3 per cent of the value of the realty. The evidence shows that on November 15, 1940, there were arrears in real estate taxes assessed against the mortgaged property in the amount of $833.40 and in water rates of $57.75. However, the evidence also shows that a substantial part of these arrears were paid during 1941 and the remainder on March 3, 1942. Presumably the arrears were paid by the mortgagor since there is no evidence that such amounts were paid by the executors. There is no evidence with respect to the financial responsibility of the mortgagor. The respondent introduced no evidence of value. From all the evidence we conclude, and have found, that the mortgage in question had a fair market value on the basic date of $8,500, as contended by the petitioners. 6. Petitioners claim a deduction of $23,067.51 for executors' fees. The Commissioner disallowed the amount of $5,000 claimed in the estate tax return on the ground that no executors' fees had been *95 paid. On brief he concedes that executors' fees in an amount which it is reasonably expected will be paid may be deducted but contends that since the amount of the commissions has not been fixed, the burden rests upon the petitioners to show the amount allowable under the laws of the jurisdiction wherein the estate is being administered and that the petitioners have failed to make such a showing. It is well settled that expenses of administration, including executors' commissions, are deductible in computing the net estate before they have been paid or allowed by the court having jurisdiction of the estate provided such expenses are a reasonable estimate of the amount allowable under local laws. Arthur M. Lamport, et al., Executors, 28 B.T.A. 862; Edith M. Bensel, et al., Executors, 36 B.T.A. 246, 254, affirmed 100 Fed. (2d) 639; Estate of I. H. Burney, 4 T.C. 449, 461-2; Regulations 105, section 81.33. Under the provisions of Section 285 *96 of the New York Surrogate's Court Act, on the settlement of his account the surrogate must allow an executor for his services in such official capacity compensation on a sliding scale, viz., 5 per cent on the first $2,000, 2 1/2 per cent on the next $20,000, 1 1/2 per cent on the next $28,000, and 2 per cent on all above $50,000, the value of the property to be determined in such manner as the surrogate may direct. The Section also provides that: "* * * if there be more than one [executor], [the surrogate must] apportion [such compensation] among them according to the services rendered by them respectively. * * *
"If the gross value of the principal of the estate or fund accounted for amounts to one hundred thousand dollars or more, each executor * * * is entitled to the full compensation on principal and income allowed herein to a sole executor * * *, unless there are more than three, in which case the compensation to which three would be entitled must be apportioned among them according to the services rendered by them, respectively. * * *" Under the laws of New York, executors *97 are not entitled to compensation on the value of specific legacies. In re Wing's Estate, 55 N.Y.S. (2d) 621; In re Walker's Estate, 53 N.Y.S. (2d) 102; In re Dunnigan's Will, 30 N.Y.S. (2d) 38; In re Anable's Will, 249 N.Y.S. 462; In re Hodges' Estate, 219 N.Y.S. 302; In re Story's Estate, 202 N.Y.S. 184. A bequest of a business formerly conducted by a testator under a specified name is a specific legacy. In re Willoughby's Will, 45 N.Y.S. (2d) 177. So also are a devise and bequest of testator's home, the contents thereof, and an automobile, specific gifts. In re Kelly's Will, 45 N.Y.S. (2d) 81. Furthermore, executors are not entitled to compensation on the value of realty, unless they have title thereto or have exercised their power of sale thereof. In re Sarafen, 57 N.Y.S. (2d) 698; In re Moller's Will, 52 N.Y.S. (2d) 205; In re Jackson's Estate, 29 N.Y.S. (2d) 320; In re Wood's Estate, 295 N.Y.S. 718. A bequest or devise of the residue or fractional parts thereof is not a specific bequest or devise, as argued *98 by respondent. In re Crouse's Estate, 155 N.E. 685, 244 N. Y. 400; In re Gavey's Estate, 263 N.Y.S. 784; In re Day's Estate, 271 N.Y.S. 170; In re Link's Estate, 47 N.Y.S. (2d) 40; 69 C.J. 936-938. Neither are the two charitable bequests specific legacies since they were payable out of the general funds of the estate. See, In re Anslinger's Estate, 57 N.Y.S. (2d) 466. The petitioners concede on brief that the executors are not entitled to commissions on the value of all realty, the business conducted by decedent under the name of Van Hoesen & Bro. and the automobile of decedent. The value of such items as reported in the estate tax return and as determined by the respondent, are as follows: Value deter-
Value reported
mined by
in estate
Commissioner
tax return
All realty
$69,500.00
$69,500.00
Van Hoesen & Bro.
bequeathed to son
16,000.00 *
25,000.00
Automobile be-
queathed to wife
1,000.00
$86,500.00
$94,500.00
*99 According to the estate tax return the decedent had three bank accounts, as follows: Value
Determined
by Commis-
Reported
sioner
Brooklyn Trust Co.
$334,005.19
$334,921.12
Bankers Trust Co.
105,268.70
105,268.70
Corn Exchange Bank
Trust Co.
24,000.00
23,967.30
From the notation "Exclusive of cash returned as Item 31, Schedule 'C'" contained in the Commissioner's statement pertaining to adjustments made by him attached to the deficiency notice, it would appear that he considered the bank account in the Corn Exchange Bank Trust Co. an asset of the business of Van Hoesen & Bro. The evidence shows that prior to decedent's death there was withdrawn from the Brooklyn Trust Co. $50,000 for the conduct of decedent's business. The evidence fails to disclose which bank account or accounts belonged to the business of Van Hoesen & Bro. specifically bequeathed to decedent's son. After reducing the gross value of the estate, as determined by the Commissioner, of $1,152,375.57 as required by our determination of issues (1), (2), (3), (4) and (5) and after deducting also the value of the specific bequests, viz., the items conceded by petitioners *100 to be specific bequests and also the aggregate amount in the three bank accounts, reduced by $5,000, (issue (3)) there is a balance of $589,243.45. Deduction of executors' fees are allowable if the amount is a reasonable estimate of the amount allowable under local law. There is no evidence that the executors have waived the fees to which they are entitled. The executors' fees will be computed under Rule 50, using the above balance of gross estate as a basis, the fees allowable not to exceed the sum of $23,067.51, the amount claimed as executors' fees in the petition. 7. The petitioners claim a deduction of $15,000 for attorney fees. It is well settled that in determining the net estate there is deductible a reasonable amount for attorney's fees, even though the amount of such fees has neither been paid by the executors nor allowed by the court having jurisdiction over the estate. Irving Bank-Columbia Trust Co., et al., Executors, 16 B.T.A. 897; Estate of John E. Cain, Sr., 43 B.T.A. 1133, 1141-2; Estate of I. H. Burney, supra; Arthur M. Lamport, et al., Executors, supra; *101 and Commissioner v. Bronson, 32 Fed. (2d) 112. Section 81.34 of Regulations 105 provides that an executor in filing the return may deduct such an amount for attorney's fees "as has actually been paid, or in an amount which at the time of such filing it is reasonably expected will be paid." The evidence discloses that the executors employed an attorney "to probate the will" and that about $500 was paid to such attorney for his services. It also discloses that the executors later employed other legal counsel, their counsel herein, for the closing of probate proceedings. An attorney, who had been engaged in the practice of law and primarily in the probating of estates for some twenty years, testified that, in his opinion, attorney's fees of about $25,000 would be reasonable in an estate of the size involved herein, and that for the services ordinarily rendered in such an estate he considered a fee of $15,000 a "modest" fee. J. Fred Lohman, Jr., one of the executors, although he at first testified that he had made no agreement to pay any specific amount to present counsel, later admitted that he signed the New York transfer tax form in which a deduction of $15,000 was claimed *102 for attorneys' fees as a part of the expense of administration of the estate. It is our conclusion, upon the record, that the respondent erred in not allowing a reasonable amount for attorney fees and that petitioners are entitled to an additional deduction for attorneys' fees in the amount of $14,500. 8. It is further claimed by petitioners on brief that the Commissioner erred in computing accrued interest on four mortgages, a part of decedent's estate, to the extent of $83.20. In the petition it is alleged as an assignment of error that the "petitioners contest the additions to the value of the gross estate set forth as being $90,005.23." In support of such assignment it is alleged that the "executors do not reconcile figures shown by the Treasury Department with figures agreed after examination as corrected values as of the date of death." No facts are alleged with respect to the erroneous calculation of accrued interest. The increase in value of $90,005.23 is the result of numerous adjustments. The above pleading does not comply with Rule 6 (d) and (e) of the Tax Court. No issue with respect to accrued interest is before us. George James Nicholson, 3 T.C. 596; *103 Martin Band Instrument Co., 2 B.T.A. 963. Furthermore, even if the issue were before us, the correct amount of accrued interest could not be determined as petitioners failed to disclose the interest rate. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(c) Transfers in Contemplation of, or Taking Effect at Death. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * death, * * *. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; * * *↩
*. "Exclusive of cash returned as Item 31, Schedule C," being Bank deposit in Corn Exchange Bank Trust Co. reported in the amount of $24,000 and determined by the Commissioner as $23,967.30.↩