Joseph W. Cribb, S.
In this accounting proceeding numerous objections were filed by James A. Avery, committee for Howard A. Alcott, an incompetent, who is the husband of the deceased. Thereafter the issues were tried in part, the objectant withdrew several objections, and the executor conceded certain points leaving three issues remaining for decision. In addition, by agreement among counsel, the question of the request by the committee for costs in this proceeding as well as in a prior proceeding is submitted for determination at this time, as well as the proposed distribution of income earned during the period of administration. Proper determination of all these questions requires some knowledge of the deceased’s former living arrangements and her relationship to the executor, certain terms of her will and of the prior proceeding brought by the committee for leave to open a default and for permission to file a notice of election on behalf of said incompetent against the will of Maude 0. Alcott.
Decedent and the accounting executor were sisters. Each lived with their husbands in separate apartments in an apartment house owned by decedent at 225 Genesee Street in Geneva, New York. They were most amicable, and decedent permitted her sister to occupy a ground-floor apartment across the hall at a rental of $40 a month. In addition they operated a small business known as Keilty Dry Goods Company, Inc. Deceased owned 177 shares, her sister 172 shares, and the one remaining share was owned by Mr. Kuryla, husband of the accounting party. Testimony on the trial revealed that no dividends have been paid on this stock since decedent’s death and that all estate income has been in the form of rentals from the apartment house or interest on some bank deposits. It further revealed that two second-floor apartments currently rent for $65 each and that the two third-floor apartments rent for $50 and $60.
*266 Pertinent portions of deceased’s will are as follows:
second : I hereby direct that one-third (%) of all my property and estate, wheresoever the same may be situate, be set apart as hereinafter provided for my husband, howabd a. aloott, and out of such one-third (Yz) part, I hereby give and bequeath to him the sum of Twenty Five Hundred Dollars ($2500.00) in cash upon my death. The remainder of the one-third (Yz) part of my estate I hereby give, devise and bequeath to my executor hereinafter named, in trust nevertheless, to invest and re-invest the same and to receive the rents, profits and income thereof and to pay the net income thereof to my said husband in monthly payments during his natural life. The foregoing provisions in this Will in favor of my said husband are in lieu of all claims which he may have as my surviving spouse whether by way of an election to take an intestate share or otherwise. Upon the death of my said husband
I hereby give, devise and bequeath the residue of the said one-third (Yz) part of my estate as follows:
To my beloved sister amy b. kubyla, of the City of Geneva, New York, for and during the term of her natural life. I further direct that she shall have the right to use such portions of the corpus of the said residue as may be necessary for her proper support and maintenance. Upon the death of my said beloved sister, amy b. kubyla, I hereby give and bequeath the said residue or such portion thereof as remains as follows:
(A) . One fifth (%) thereof to my beloved niece dobothy hassingeb, to be hers absolutely and forever.
(B) . One-fifth (%) to my beloved niece jane king, to be hers absolutely and forever.
(C) . The remaining three-fifths (%) thereof to be divided equally among the children of my beloved niece jane king, to be theirs absolutely and forever, share and share alike.
third : During the lifetime of my beloved husband, howabd a. alcott, or so long as he may wish to use it, I direct that my residence in the City of Geneva, New York, together with all furniture and furnishings therein may he used and occupied by him.
If my apartment house located on Genesee Street, known as the Charleston Apartments shall constitute a one-third (Yz) part of my estate it is my wish and I request that the same be set aside as the one-third (Yz) of my estate for the purpose specified in paragraph “ two ” hereof.
eoubth: It is my desire and I direct that the one-third (Yz) part of my estate provided for in paragraph “ two ” of my Will be taken of such portion or part of my estate as shall not include any interest which I may have as stockholder or otherwise in the ICeilty Dry Goods Company, Inc., of Geneva, New York.
eieth : I give devise and bequeath all of my stock and or any and all interest which I may have in the Keilty Dry Goods Company, Inc., of Geneva, New York, to my beloved sister, amy b. kubyla, to her use for and during the term of her natural life. In addition to the said life use or income therefrom, I hereby grant unto my said beloved sister, amy b. kubyla, the full power to use my share or as much of the principal or corpus of my said stock or interest in and to the said Keilty Dry Goods Company, Inc., of Geneva, New York, as she may deem fit for any purpose within her discretion and I do not require that she account to any one for her actions in exercising such discretion. In the event of the death of my said beloved sister, amy kubyla, then in such event I give devise and bequeath such stock and or interest which I may have in the *267 said Keilty Dry Goods Company, Inc., of Geneva, New York, or such portion thereof as may remain upon the death of my said sister, amt kuryI/A, as follows:
(A) . One-fifth (%) thereof to my beloved niece dorothy bassinger, to be hers absolutely and forever.
(B) . One-fifth (%) to my beloved niece jane king, to be hers absolutely and forever.
(C) . The remaining three-fifths (%) thereof to be divided equally among the children of my beloved niece jane king, to be theirs absolutely and forever, share and share alike.
The will further directed payment by the executor of all ‘ ‘ Legitimate expenses incurred in the administration of my estate ” and named petitioner in this proceeding as executor and trustee.
The will was admitted to probate May 18, 1960. On October 13, 1960, Howard A. Alcott, the surviving husband was committed to Willard State Hospital, and on February 6, 1961, James A. Avery was appointed committee of the person and property of said Howard A. Alcott, and commission issued to him on February 16, 1961. On February 24, 1961, said committee petitioned this court for an order opening the default of said Howard A. Alcott in making an election against the will, and further, for leave to make such an election. This action was resisted by petitioner, the matter adjourned from time to time and proofs taken. A psychiatrist testified on behalf of the committee after which two psychiatrists were called on behalf of petitioner to examine the incompetent spouse of the decedent and which they did pursuant to order of this court dated June 8, 1961. Thereafter, and after considerable negotiation, the matter was eventually compromised by agreement dated July 14, 1961, and a decree entered approving the same. The net result of the will and agreement is to provide that 5/12 of the estate be set aside in trust for the incompetent with income to be paid to him for life. On his death the corpus passes to other persons. The $2,500 outright to him is paid from this 5/12. In addition, a 1/12-share of the net estate is to be paid outright to him. Thus the committee secured an increase of one sixth in the amount to be received by the incompetent over the amount provided by the will.
The committee’s three remaining objections to the account may now be considered.
First, objection is made to including the value of the real property ($22,000) in the proposed computation of commissions as shown in “ Schedule J ”, and the special guardian agrees with this contention. This real estate is to be turned over in kind by the executor to the trustee for the purpose of the trust created by the will. The executor is not entitled to commissions on this *268 real estate. The power of sale was never exercised and there Avas no equitable conversion. (Matter of Greer, 123 Misc. 909; Matter of Taylor, 121 Misc. 7; Matter of McCarthy, 145 Misc. 556; Matter of Woods, 251 App. Div. 141.) I am not unmindful of the wording of subdivision 2 of section 285 of the Surrogate’s Court Act which by implication at least would seem to indicate that real property need not, necessarily, have been sold in order to qualify for commissions. However, this argument has been advanced before and rejected. (Matter of Gates, 4 Misc 2d 749.) Even when a testator directed that his real estate be deemed to be personal property, thereby effecting an equitable conversion of the same, the Court of Appeals has denied commissions on unsold realty. (Matter of Salomon, 252 N. Y. 381.)
Second, objection is made to payments made by the executor to the two psychiatrists, Dr. Harold Bonner and Dr. Douglas C. Evans and also to Mr. Harry Ladne, court reporter, as shown in “ Schedule C ” of the account; further objection is made in that the account is erroneous in that it fails to surcharge the executor with the amounts so paid. These objections are dismissed. Subdivision 1 of section 285 of the Surrogate’s Court Act provides that the Surrogate must allow to an executor on the settlement of his account ‘1 his just, reasonable and necessary expenses actually paid by him ”. Furthermore, as above stated, the will in question directed the executor to pay ‘ ‘ all legitimate expenses incurred in the administration of my estate.” Certainly these were legitimate expenses, and the two doctors examined the incompetent spouse pursuant to order of this court. Objeetant claims the executor was fighting the right of election as an individual beneficiary, attempting to protect her own interest; while this was undoubtedly partially true, there are also remaindermen who inherit after the termination of the trust and after the intervening life use of same to the executor. As the special guardian stated in his memorandum: “ The executor * * * was fighting to preserve the integrity of the Will and of the estate against a claim of the incompetent. ’ ’
Third, objection is made to “ Schedule E ” of the account in that the executor should be surcharged for the difference in rental she paid and the amount for which her apartment could have been rented. The executor testified that she has paid and now pays $40 per month rental, that the other apartments rent for anywhere from $50 to $65 per month and that ‘ ‘ I think we could get $70.00 ” for one of the ground-floor apartments. It appears also that she completely oversees the property and its management. The account reveals that, up to the present time, the apartment house has shown a loss, Avith expenses exceeding *269 income. While the court is sympathetic with the executor’s position and feels confident she has not in any way acted in had faith in the matter, I am constrained, nevertheless to surcharge her.
In a similar case Surrogate Wither of Monroe County stated: ‘ ‘ Although a fiduciary is not chargeable with failure to receive the best price obtainable for an estate asset, either by sale or rental, he is chargeable with using good faith and reasonable business judgment with respect thereto.” In that case the representative rented for $45 per month and testimony revealed the premises worth $60 to $65. Nevertheless, under the circumstances, he only surcharged her $10 per month. (Matter of Stevens, 92 N. Y. S. 2d 226.) Since the apartment house in the instant case has been losing money, and inasmuch as the incompetent surviving spouse is to a large extent dependent upon income derived from it as a part of the trust for his benefit, it seems obvious that in the exercise of good business judgment petitioner should collect a larger amount than $40. (Matter of Gugliuzza, 131 N. Y. S. 2d 213; Matter of Gandy, 14 Misc 2d 472.) In the administration of an estate the representative is under an imperative duty to assume the management of the real property and to render the same profitable if possible. (Matter of Reynolds, 46 N. Y. S. 2d 367.) A fiduciary is “ bound to so deal with estate property so as not to gain any advantage directly or indirectly for himself.” (Matter of Offen, 45 N. Y. S. 2d 348, 350.)
Under the circumstances of this case, for the purposes of this proceeding only and without delving into what might be considered a fair rental value in the future, petitioner is surcharged in the sum of $15 per month from the date of her appointment to the date of her account.
There remains the question as to the proposed distribution of income earned during the period of administration and of costs to the committee. While no cases or statutes were cited by any party, it is my judgment that such income in the sum of $881.90 should be distributed on a 50-50 basis as proposed by the executor, that is, one half to objectant as beneficiary of one half of the estate and the remainder to the executor individually. Such appears proper under section 17-b of the Personal Property Law which provides for prorata distribution ‘1 Unless otherwise expressly provided by the will ”. I do not feel the direction in the will that the real property be placed in trust is equivalent to expressly providing for the disposition of income therefrom, nor does the settlement made at the time the right of election matter was compromised change the situation. There being no *270 expression to the contrary in the will of the decedent, all interest or income earned by her estate from the date of her death is distributable proportionately among the residuary legatee and the person designated as income beneficiary of the trust of the residuary estate, taking into account in this case, the changes in such portions as determined by the prior compromise agreement. (Matter of Fairchild, 15 Misc 2d 272; Matter of Shubert, 10 N Y 2d 461; Matter of Mattes, 12 Misc 2d 502; Matter of Dunn, 170 Misc. 702.)
The question of costs to objectant hinges upon an interpretation of section 278 of the Surrogate’s Court Act which states that the Surrogate, upon rendering a decree, may, in his discretion, allow costs to petitioner or to “ any other party who has succeeded in a contest”. In the instant proceeding objectant seeks costs not only in this proceeding but also in connection with the prior proceeding which culminated in a compromise agreement approved by decree dated August 23, 1961. This application is opposed by the special guardian as well as attorneys for the accounting party. Since no request for costs was made in that prior proceeding, and since no reservation of any right to apply subsequently for such was entered in the decree, they are hereby denied. (Matter of Proben, 23 Misc 2d 993; Matter of Bloomingdale, 169 Misc. 968; Matter of Kroos, 200 Misc. 1003.)
The instant proceeding culminated in a “ contest ”. (Matter of Zuckerman, 13 Misc 2d 93.) In opposition it is argued that he was not a “ successful contestant ” because many objections were withdrawn and some conceded. A party need not be completely successful to warrant costs. Construing section 278 of the Surrogate’s Court Act relative to costs in a will construction proceeding (which admittedly is made under a different portion of said section) Surrogate Wingate pointed out that the essential basis for such an allowance is the usual one of at least partial success. (Matter of Curley, 161 Misc. 391.) And costs were allowed a partially successful objectant in an accounting proceeding such as this in Matter of Ryan (181 Misc. 566) where Surrogate Delehanty took cognizance of the fact that many of the 300 objections had been sustained but that the representative had successfully resisted the attack in the case of others.
Objectant’s application for costs upon settlement of the decree in this contested accounting proceeding is hereby allowed under section 278 of the Surrogate’s Court Act. (Matter of Vorndran, 132 Misc. 611; Matter of Mass, 201 Misc. 668.)
Let a decree be entered accordingly directing the payment of such costs to objectant’s attorney payable out of the estate.